THE STATE v. ERNEST LOVAN, Appellant.

Division Two, November 13, 1912.

1. **FALSE PRETENSE: Information: Omission of Word Designedly.**   In a prosecution for obtaining property by false pretense, an information which omits the word "designedly" may be good under Sec. 4765, R. S. 1909, whether or not it is bad, because of the omission of that word, under Sec. 4565, R. S. 1909.

State v. Lovan.

2. ―――: ―――: **Omission of Words, "By Means or By Use Of": Technical Defect.** In a prosecution for obtaining property by false pretense, an information which only in the last paragraph contains the charge that defendant obtained the property "by means or by use of" the false pretense set out elsewhere at length, is technically defective, since, upon precedent, such charges should appear in the body of the information preceding the conclusion; but purely technical objections should not be encouraged, and where the information, taken as a whole, clearly advises the defendant that he is charged with an offense as defined by the statute, and clearly sets forth the facts upon which the charge is based, it should not be *held* bad because of such technical defect.

3. ―――: ―――: ―――: **Inferred from Words Used in Conclusion.** A statement in the conclusion that defendant "by means or by the use of" the false pretense obtained the property of another is not to be disposed of as a mere argumentative legal inference from facts previously stated, and therefore unsound. On the contrary, a charge of felonious intent is necessarily a deduction or inference from an allegation of facts which constitute the statutory offense and to which the charge refers.

4. ―――: **Instruction: Use of Word "Whereas" in ·Negation.** The use of the word "whereas" in the negative part of an instruction in a prosecution for obtaining money by false pretense, is both awkward and meaningless; but if the words, "if the jury shall further find that," are used before it the defect is cured.

5. ―――: **Evidence: Deeds: Identifying Land.** In a prosecution for obtaining lands exchanged for other property and falsely ·represented, in the contract of exchange though not specifically described therein, to be free from all incumbrances, whereas they were in fact incumbered by two recorded mortgages, deeds, handed to the prosecuting witness, after the trade was completed, by defendant, in response to a request for a description of the property, and in which the lands are described as they are in the information, are competent evidence to identify the land mentioned in the contract with the lands described in the information.

6. ―――: ―――: **Self-serving: Incumbered Land: Represented to be Unincumbered: Criminal Intent: Owner of Mortgage: Arrangement to Pay.** Defendant and the prosecuting witness entered into a written contract for the exchange of properties, in which defendant represented· his lands to be free from all incumbrances, whereas they were incumbered by two deeds of trust; and defendant testified that he told the prosecuting wit-

State v. Lovan.

ness of these mortgages at the time and further told him that he had an arrangement with the holder of them by which he could get them at any time; and said holder testified that they had been put up with him as collateral security for a loan. *Held,* that it was error to refuse to permit the holder to testify that he had a conversation with defendant in reference to surrendering the mortgage notes, even though the arrangement had not been carried out; for if defendant had pledged the notes the fair inference is that he was their owner, and if he was their owner, even though they were not pledged, the testimony was competent as bearing on the question of criminal intent in making the representation.

7. ————: ————: **Of Other Transactions: Withdrawal: Cure.** A withdrawal by verbal direction of incompetent evidence does not always cure the injury done. Where the prosecuting attorney, in a prosecution of defendant for obtaining property by false pretense, in his opening statement, over defendant's objection, detailed to the jury certain facts which he proposed to prove concerning another transaction of a fraudulent nature involving defendant, and a witness was permitted, over defendant's objection, to testify to the facts of this other transaction, the court did not cure the injury done by ruling, after the testimony was in, that it was incompetent, and by withdrawing it, by verbal direction, from the jury. That was a withdrawal in form, but not in fact from the minds of the jurors.

8. ————: ————: **Unincumbered Real Estate: Written Contract: Parol Testimony.** Fraud is not merged in a written contract. Where the written contract was brought about by fraud, proof of that fraud may be in parol. So that where defendant was charged with falsely representing that the land was free from all incumbrances, and the agreement for exchange of properties was in writing, defendant cannot escape on the ground that the written contract does no more than bind defendant to guarantee the title, for the fraud does not depend solely on the written contract, and parol testimony of the prosecuting witness that defendant verbally assured him before the contract was written that the land was unincumbered, was competent. In such case, the rule applied in civil cases in actions upon written contracts, namely, that prior conversations and oral agreements are merged in the writing, have no application.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Cooper & Wilson, Moore & Creel,* and *Wofford & Kimbrell* for appellant.

(1) The information was drawn and the case was tried under the false pretense statute, Sec. 4565, R. S. 1909, as amended by Laws 1911, p. 195, and cannot now be shifted to the cheat-and-fraud statute, Sec. 4765. Instruction 1, given at the instance of the State, is erroneous for failing to instruct as for a misdemeanor in case the jury should have found the value of the livery stable stock to be less than thirty dollars. Sec. 4920, R. S. 1909; State v. Marion, 235 Mo. 359. (2) The information is bad under Sec. 4565, R. S. 1909, for the reason that it does not charge the acts and representations complained of to have been done and made "designedly." State v. Puckett, 174 Mo. 663; State v. Martin, 226 Mo. 538. (3) The information is bad under Sec. 4765, R. S. 1909, for the reason that it does not charge that Hannay "by means or by use of" the alleged misrepresentations, trick or deception was induced to assign, convey, transfer and deliver, and did then and there assign, convey, transfer and deliver to said Lovan all of said shares of stock. Sec. 4765, R. S. 1909; State v. Martin, 226 Mo. 538. (4) The information is bad under Sec. 4765, R. S. 1909, for the reason that the alleged trick, deception or false and fraudulent representations are not set forth in the information with particularity, so that the accused might be informed sufficiently of the cause and nature of the accusation. State v. McChesney, 90 Mo. 120; State v. Martin, 226 Mo. 538. (5) The information is bad· for the reason that it does not charge that said Lovan falsely, fraudulently and feloniously offered and proposed to him, the said Hannay, that he, the said Lovan, would then and there trade, transfer and convey to him, the said Hannay, one-half of the capital stock of the Lovan Investment Company, and falsely,

fraudulently and feloniously offered and proposed that said Lovan would then and there trade, transfer and convey to Hannay one-half of the real estate described. State v. Buchfelder, 231 Mo. 55; State v. Herrell, 97 Mo. 108. (6) Instruction 1, given by the court, on behalf of the State, is erroneous for the reason that it does not tell the jury what false representations the defendant is charged with, but refers the jury to the information for that purpose. State v. McCaskey, 104 Mo. 644; State v. Marion, 235 Mo. 359; State v. Steele, 226 Mo. 583. (7) Instruction 1 is erroneous for the reason that it assumes, and directs the jury, that Lovan and the Lovan Investment Co. were not the owners of the real estate described; assumes, and directs the jury, that said real estate was not free and clear of encumbrances; assumes, and directs the jury, that said real estate was mortgaged; assumes, and directs the jury that Lovan knew that said real estate was not free and clear; and assumes, and directs the jury, that Lovan knew it was mortgaged. State v. Steele, 226 Mo. 583. (8) The court erred in refusing to instruct the jury at the close of all the evidence to find the defendant not guilty for the reason that testimony that the defendant represented to Hannay that he owned, free and clear of encumbrance, "280 acres, Morgan County, Missouri," does not sustain or support, or tend to sustain or support, the allegation of the information that the defendant represented that he owned, free and clear of encumbrance, "the west one-half of the southeast quarter and the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter, all in section 10, township 40, range 19, containing 160 acres, and the east one-half of the northeast quarter of section 15, and the southeast quarter of the southeast quarter of section 10, township 40, range 19, containing 120 acres, all in Morgan County, Missouri," and the question is not a question of variance, but an

absolute failure of proof. State v. Cook, 162 Ala. 90;
State v. Scheib, 159 Mo. 142; State v. Plant, 209 Mo.
307; State v. Mispagel, 207 Mo. 557. (9) The court
erred in excluding the testimony of J. J. Swofford on
the point of his having had an agreement with the
defendant that he would surrender the mortgage notes
against the Morgan county land, which he held as
collateral security. It was not necessary for defend-
ant to make a formal offer to prove the agreement be-
tween him and Swofford in order to save the point
here urged. The question was put in such form as to
disclose its materiality. The exclusion of this testi-
mony constitutes reversible error. Jackson v. Har-
din, 83 Mo. 187; State v. Young, 119 Mo. 522. (10)
The court erred in permitting the witness, Crauel, to
relate before the jury his transaction with defendant
about a $11,000 note in 1908, giving the jury the im-
pression that defendant had obtained such note under
false pretenses. This was a separate and distinct
transaction and had no connection whatever with the
charge in the information and the relation of the
circumstance before the jury was highly improper
and prejudicial to the defendant. The fact that the
court, after the evidence was in, stated to the jury that
the evidence was withdrawn from the consideration of
the jury, did not cure the error. State v. Goetz, 34
Mo. 85; State v. Daubert, 42 Mo. 246; State v. Parker,
96 Mo. 389; State v. Spray, 174 Mo. 576; State
v. Speyer, 207 Mo. 540; State v. Hyde, 234
Mo. 250. (11) The court committed error in per-
mitting the cross-examination of defendant regard-
ing matters to which he did not testify in chief.
This was particularly prejudicial, because the cross-
examination related to the transaction between de-
fendant and Crauel in the year 1908, about a $11,000,
note, it being the same transaction about which Crauel
testified. It was not referred to in defendant's testi-
mony in chief. It is reversible error to permit the

cross-examination. Sec. 5242, R. S. 1909; State v. Mc-Graw, 74 Mo. 573; State v. Porter, 75 Mo. 171; State v. Turner, 76 Mo. 350; State v. Patterson, 88 Mo. 88; State v. Chamberlain, 89 Mo. 129; State v. Brent, 100 Mo. 531.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1.) The information is good under Sec. 4565, R. S. 1909. It contains the substantial words of the statute, and fully sets forth the exact nature of the false representations made by the defendant. State v. Pickett, 174 Mo. 663; State v. Vandenburg, 159 Mo. 230. (2) Even if the information should be held bad under Sec. 4565, R. S. 1909, because of the omission of the word "designedly," it is good under Sec. 4765, R. S. 1909. State v. Martin, 226 Mo. 538; State v. Woodward, 156 Mo. 143; State v. Wilson, 223 Mo. 156. The acts and representations set out in the information bring this offense clearly within the class of cases defined by Sec. 4765, and the offense is a felony regardless of the value of the property obtained. State v. Bayne, 88 Mo. 604; State v. Woodward, 156 Mo. 143; State v. Jackson, 112 Mo. 585; State v. Vandenburg, 159 Mo. 230. The false and fraudulent representations, pretenses and statements and all the constituent elements of the offense are set out with particularity and precision, and the information fully informs defendant of the nature and cause of the accusation. State v. Woodward, 156 Mo. 143; State v. Vandenburg, 159 Mo. 230; State v. Martin, 226 Mo. 538. (3) No error was committed in admitting in evidence the two warranty deeds from defendant and his wife to the Ernest Lovan Investment Company, conveying to the latter the 280 acres of land in Morgan county. These deeds were admissible for the purpose of identifying the 280 acres of

land listed in the contract between defendant and the prosecuting witness, of date April 9, 1910. Nor was there error in admitting in evidence the two deeds of trust on the Morgan county land, held by Swofford. These deeds of trust were admissible for the purpose of showing that there were encumbrances on the Morgan county land at the time that defendant represented said land to be free and clear of encumbrance. (4) The court did not err in sustaining an objection of the State to the question asked by defendant of Swofford, the party who held the two notes and the deeds of trust on the Morgan county land. The question asked is as follows: ''Did Mr. Lovan ever call to see you with reference to your surrendering those notes to him?'' This testimony was wholly immaterial. There was no offer to show that defendant had any arrangement with Swofford by which he was to take up the notes, and even if there had been such an arrangement, it was not material to any issue in the case. (5) The court, on the objection of defendant, withdrew from the consideration of the jury all the evidence of Crauel, pertaining to the transaction had by him with defendant, and the court, further, by instruction 4, instructed the jury to wholly disregard all testimony stricken out of the record by the court, and that the jury must decide the case entirely upon the testimony admitted by the court. State v. Hopper, 71 Mo. 425; State v. Lett, 85 Mo. 52; State v. Fitzgerald, 130 Mo. 436; State v. Gartrell, 171 Mo. 511; State v. Church, 199 Mo. 638; State v. Barrington, 198 Mo. 23; State v. Turner, 76 Mo. 350. (6) The record shows that in all except two or three instances the court sustained the objections to the prosecuting attorney's cross-examination of the defendant; and these instances related to matters on which he had been examined in chief. State v. Worton, 139 Mo. 526; State v. Eisenhour, 132 Mo.

140; State v. Williams, 186 Mo. 128; State v. Miller, 190 Mo. 449.

FERRISS, J.—Defendant was convicted in the criminal court of Jackson county on an information charging him with the crime of obtaining property by false pretenses, and sentenced to two years in the penitentiary. The information charges that defendant, with intent to defraud one George F. Hannay, did falsely, etc., represent to said Hannay that he, the defendant, and the Ernest Lovan Investment Company, owned in fee simple, and free and clear of all incumbrances, several parcels of real estate, described in detail in the information, and that said Hannay was the owner of certain capital in certain corporations, set out in detail. The information then proceeds as follows:

"That said Lovan, then and there, offered and proposed to him, the said Geo. F. Hannay, that he, the said Lovan, would then and there trade, transfer and convey to him, the said George F. Hannay, onehalf of the capital stock of said Ernest Lovan Investment Company, a corporation as aforesaid, and would then and there trade, transfer, and by good and sufficient warranty deed convey to the said Ernest Lovan Investment Company, one-half of the real estate above described, in exchange for the said shares of stock of Palace Stable Company, a corporation as aforesaid, and said shares of stock in Fashion Stable Company, a corporation as aforesaid, owned by said Hannay, as aforesaid.

"That said Hannay, believing the said Ernest Lovan and the Ernest Lovan Investment Company to be the owners of said real estate, described as aforesaid, and believing the said false and fraudulent statements of said Lovan in that behalf made as aforesaid, to be true, and relying thereon and being deceived thereby, was induced by reason thereof to assign, con-

vey, transfer and deliver, and did then and there assign, convey, transfer and deliver to the said Lovan all of said shares of stock in said Palace Stable Company and the said Fashion Stable Company, as above set forth and described, by him, the said Hannay, owned as aforesaid, in exchange for one-half of the capital stock of said Ernest Lovan Investment Company, and one-half of interest in the real estate above mentioned and described, which he, the said Ernest Lovan, did then and there pretend to assign and convey to him. the said George F. Hannay:

"Whereas, in truth and in fact, neither the said Ernest Lovan nor the Ernest Lovan Investment Company was then and there the owner of, nor had they, or either of them, any title or claim whatsoever to the said real estate, or any part thereof, as hereinbefore described and referred to as tracts 1, 2, 3, 4 and 6, except that said Ernest Lovan was lessee in a lease, for a period of ninety-nine years, covering the land mentioned and described in tract 1; and whereas in truth and in fact the said Ernest Lovan and the said Ernest Lovan Investment Company, or either of them, were not then and there the owners of the land in Morgan county, Missouri, hereinbefore mentioned and described, referred to and designated as tract No. 5, free and clear of all incumbrances whatsoever, but the said land and every part thereof was then and there incumbered with a valid and subsisting mortgage lien of fourteen hundred dollars, by virtue of two deeds of trust, both dated July 3, 1909, executed by J. E. Snodgrass to S. E. Berry, to secure the payment of two promissory notes of even date for six hundred dollars and eight hundred dollars respectively, the former due nine months after its date, the latter due one year after its date, both notes drawing interest at the rate of seven per cent per annum; said mortgages being of record in the office of the recorder of deeds in Mor-

gan county, Missouri, in book 21, page 396, all of which he, the said Ernest Lovan, then and there well knew.

"And so the prosecuting attorney says, upon his oath aforesaid, that he, the said Ernest Lovan, by means of the said deception and false and fraudulent statements and pretenses, so made as aforesaid, then and there unlawfully, knowingly and fraudulently and feloniously did obtain of and from him, the said George F. Hannay, the shares of the capital stock of the Palace Stable Company and the said shares of the capital stock of the Fashion Stable Company, as above described, and of the aggregate value of $17,714.28; against the peace and dignity of the State."

The State introduced in evidence the following written contract:

"This contract and agreement entered into this 9th day of April, 1910, by and between Ernest Lovan, of Kansas City, Missouri, hereinafter called party of the first part, and G. F. Hannay, of Kansas City, Missouri, hereinafter called the party of the second part, witnesseth:

"That whereas, the party of the first part is now engaged in the general real estate and brokerage business, having offices at 517-521 Finance Building, Kansas City, Missouri, and whereas it is his intention to enlarge his business, giving more attention to the handling of farms and lands, and desiring to associate with him the party of the second part, and with this end and purpose in view, the party of the first part binds himself and guarantees to do as follows:

"First. That he will transfer to party of the second part one-half of the stock of the Ernest Lovan Investment Company, an incorporation under the laws of Missouri.

"Second. That party of the first part will convey to said Investment Company for the use and benefit of said company the real estate and personal property hereinafter described, guaranteeing that each and

every tract of land specified is free and clear of all incumbrances, save and except such incumbrances as may be noted at this time, and that the valuation placed by the party of the first part against each separate tract, piece or parcel of land is a fair and just cash valuation, and that it will and must net the company at least a profit of five thousand dollars within a reasonable time.

"Description of Property
"Clear and free from Incumbrance.
"Flat property located No. 575 Oak St.,
    Kansas City, Missouri ............$6000.00
4 cottages, 100 feet ground (front), To-
    peka, Kansas ........... ..........$2000.00
640 acres, McPherson county, Nebraska..$6400.00
280 acres, Morgan county, Missouri.....$3500.00
166 2-3 acres, Morgan county, Tennessee$ 500.00
40 acres, Newton county, Missouri......$1500.00
40 acres, Orange county, Indiana.......$ 500.00
2 lots, Ft. Scott, Kansas ..............$ 300.00
Merchandise in store room at 10th & Gar-
    field .. .. ......................:..$1000.00
Office furniture and fixtures............$ 400.00
160 acres, Logan county, Kansas, value
    $2000; Mtg. $500, Equity ..........$1500.00
160 acres, Harper county, Oklahoma, value
    $2500; Mtg. $1000, Equity.........$1500.00
80 acres, Dallas county, Missouri, value
    $1000; Mtg. $500, Equity ..........$ 500.00
100 ft. Virginia Ave., Kansas City, Mis-
    souri, value $2000; Mtg.$1300,Equity.$ 700.00
7 lots and business house, Wentworth, Mo.,
    value $3500; Mtg. $2500, Equity.....$1000.00

"Third.   The real estate above described is subject to change by agreement of the parties hereto; that is to say, that if the party of the second part desires

other real estate owned by the party of the first part substituted for any property listed herein, then the same is to become.an asset of the Ernest Lovan Investment Company, and such substitution will be made by the party of the first part. One of the main features and points to this agreement on the part of the party of the first part is, that the property shown and described belonging at this time to the Ernest Lovan Investment Company must and shall net to said company within a reasonable time at least twenty-five thousand dollars, which will be a profit of twenty-five per cent on twenty thousand dollars.

"Fourth. The party of the first part agrees to accept from the party of the second part, for the interest as herein stipulated, the sum of ten thousand dollars and that he will accept for the ten thousand dollars the interest of said party of the second part in the Palace Stable Company and the Fashion Stable Company. The transfer of the interest of the party of the second part in this company is distinctly understood to be without any guarantee on his part as to the value of such interests.

"Fifth. The party of the first part agrees to loan the Ernest Lovan Investment Company immediately one thousand dollars, same to be placed in the bank to the credit of the company. He further agrees to loan them an additional one thousand dollars if needed at any time within the next six months, to insure the party of the second part his salary of two hundred dollars per month. Conveyances of any kind for property belonging to said investment company, whether real or personal, and all checks drawn on the bank, are to be signed by the president and secretary in their official capacity. Ernest Lovan, party of the first part, is to be president, and G. F. Hannay, part of the second part, is to be secretary and treasurer.

"Sixth. The party of the second part is to give particular attention to land and farm sales, and it is

understood that he will devote such time as may be necessary to the examination of such property.

"Seventh. In the event of the dissatisfaction on the part of either party, it is understood that the party of the first part is to buy for cash the interest of the party of the second part, and pay him therefor within three months from written notice the actual value at the time of sale, which shall not be less than the amount of the original investment, ten thousand dollars. It is understood that if withdrawals have been made from the business in excess of salaries, same is to be taken into consideration and applied against the original investment and profits.

"Eighth. Both parties hereto are to receive a salary of two hundred dollars per month. This may be changed at any time by mutual consent.

"Ninth. It is understood and agreed that the property of the Ernest Lovan Investment Company, real and personal, is to secure the carrying out of this contract according to the legal tenor and effect, and further understood that the party of the second part may, if he so elect, sell and assign his stock either with or without this contract and agreement, provided he has first given notice to the party of the first part that he wishes to sell in accordance with section seven of this contract.

"To all of which we bind ourselves, our heirs, executors and administrators forever.

"ERNEST LOVAN,

"G. F. HANNAY."

All of the parcels of real estate were eliminated from the case save the two hundred and eighty acres in Morgan county, Missouri. The case went to the jury upon the representations concerning this one parcel. Testimony was given for the State tending to sustain the allegations in the information. The evidence

for the State showed that at the time when the alleged representations were made, the Morgan county land was incumbered by two deeds of trust. The defendant testified that he told Hannay about these incumbrances, and told him, further, that he had arranged to clear them from the land. Hannay testified that defendant specifically told him, before the trade was made, and before the contract above set forth was signed, that this land was clear and free from incumbrances. Further facts necessary to an understanding of the questions discussed herein will be found in the opinion.

I. It is claimed that the information is bad under Sec. 4565, R. S. 1909, because of the absence of the word "designedly," which is an essential element of the offense defined by the statute. This court has held that an information omitting the word "designedly" is bad under said section. [State v. Pickett, 174 Mo. 663.] This holding is somewhat doubtfully recognized in State v. Martin, 226 Mo. l. c. 547. We need not reexamine the question, as we consider the information good under Sec. 4765, R. S. 1909.

Defendant contends that the information is bad under section 4765, and sets out his contentions thus in his brief:

"3. The information is bad under Sec. 4765, R. S. 1909, for the reason that it does not charge that Hannay, 'by means or by use of' the alleged misrepresentations, trick or deception, was induced to assign, convey, transfer and deliver, and did then and there assign, convey, transfer and deliver, to Lovan all of said shares of stock.

"4. The information is bad under Sec. 4765, R. S. 1909, for the reason that the alleged trick, deception or false and fraudulent representations are not set forth in the information with particularity, so

that the accused might be informed sufficiently of the cause and nature of the accusation.

"5. The information is bad for the reason that it does not charge that said Lovan falsely, fraudulently and feloniously offered and proposed to him, the said Hannay, that he, the said Lovan, would then and there trade, transfer and convey to him, the said Hannay, one half of the capital stock of the Lovan Investment Company, and falsely, fraudulently and feloniously offered and proposed that said Lovan would then and there trade, transfer and convey to Hannay one half of the real estate described."

There is, we think, no merit in the contentions embraced in the above fourth and fifth assignments.

The other assignment, number 3, raises a serious question of pleading. There is authority for the position taken that the information is technically defective, according to approved precedents, because in the charging part there is no charge that the defendant obtained the stock from Hannay by means or by use of the false pretense; in other words, it does not charge the specific offense defined by the statute. This charge is found only in the last paragraph of the information. Upon precedent, it should appear in the body of the information, immediately after the allegation that Hannay, believing said representations, etc., was induced thereby, and did, convey, etc. Approved forms in this regard may be found in State v. Martin, supra; State v. Donaldson, 243 Mo. 460; 1 Wharton Prec. of Indict., form No. 529, *et seq.* In Comm. v. Dean, 110 Mass. 64, an indictment similar in form to the one under discussion was held bad. The court, speaking of the concluding statement, says: It "is a statement of a legal conclusion from the facts previously charged. The conclusion does not follow from the premises. The only allegation of an intent to defraud is made argumentatively, and as a legal inference from facts stated, and that inference is unsound."

The contention of defendant also finds support in State v. Pickett, supra. The point, however, was not controlling in the latter case. The main objection was the failure to describe the false pretense, and it was upon that ground that the information was held defective.

We are not disposed to encourage purely technical objections, based upon ancient forms and precedents. With due respect for precedent and rule, we think that when an information, taken as a whole, clearly advises the defendant that he is charged with an offense as defined by the statute, and clearly sets forth the facts on which the charge is based, it is sufficient. Measured by this rule, the information is good. We do not agree with the reasoning of the Massachusetts court, above set forth. A charge of felonious intent is necessarily a deduction or inference from the alleged facts. The charge in the final paragraph of the information sufficiently charges the intent, and appropriately refers to the previous allegations of fact upon which the inference naturally arises.

II. The defendant makes the following objection to instruction numbered 1 given by the court:

"Instruction number 1 is erroneous for the reason that it assumes, and directs the jury, that Ernest Lovan and the Ernest Lovan Investment Company were not the owners of the real estate described; assumes, and directs the jury, that said real estate was not free and clear of incumbrances; assumes, and directs the jury, that Ernest Lovan knew that said real estate was not free and clear, and assumes, and directs the jury, that Lovan knew it was mortgaged."

Said instruction is as follows:

"The court instructs the jury that if they find and believe from the evidence that at the county of Jackson and State of Missouri, at any time within three years next before the 29th day of October, 1910, the

date of the filing of the information in this case, the defendant, Ernest Lovan, with intent unlawfully and feloniously to cheat and defraud one George F. Hannay, did falsely, fraudulently and feloniously represent and pretend to the said George F. Hannay that he, the said Ernest Lovan and the Ernest Lovan Investment Company, a corporation organized and existing under the laws of the State of Missouri, were then and there the owners in fee simple, free and clear of all incumbrances whatsoever, of the real estate set out, and described in the information as lying and being in Morgan county, Missouri; and that the said George F. Hannay was then and there the lawful owner of one hundred and twenty-seven and two-sevenths shares of the capital stock of the Palace Stable Company, a corporation organized and existing under the laws of the State of Missouri, and engaged in Kansas City, in said State, and that said shares of stock were at said time of the value of thirty dollars or more, and of one hundred and sixty shares of the capital stock of the Fashion Stable Company, a corporation organized under the laws of the State of Missouri, and engaged in Kansas City, in said State, which said shares of stock were at said time of the value of thirty dollars or more, and that the said Ernest Lovan then and there offered and proposed to him, the said George F. Hannay, that he, the said Ernest Lovan, would then and there trade, transfer and convey to him, the said George F. Hannay, one half of the capital stock of the said Ernest Lovan Investment Company, a corporation as aforesaid, and would then and there trade, transfer and, by good and sufficient warranty deed, convey to the said Ernest Lovan Investment Company, one half of the real estate above described in exchange for the said shares of stock of Palace Stable Company, a corporation as aforesaid, and the said shares of stock of the Fashion Stable Company, owned by said Hannay as aforesaid, and that the said George F.

Hannay, believing the said Ernest Lovan and the Ernest Lovan Investment Company to be the owners of said real estate described as aforesaid, and believing the said statements of said Lovan in that behalf made as aforesaid to be true, and relying thereon and being deceived thereby, was induced by reason thereof to assign, convey, transfer and deliver to the said Ernest Lovan all of the said shares of stock in the said Palace Stable Company and the said Fashion Stable Company, as above set forth and described, by him, the said George F. Hannay, owned as aforesaid, in exchange for one half of the capital stock of the said Ernest Lovan Investment Company, which he, the said Ernest Lovan, did then and there pretend to assign and convey to him, the said George F. Hannay;

"And if the jury further find that whereas in truth and in fact neither the said Ernest Lovan nor the said Ernest Lovan Investment Company was then and there the owner of the said real estate as hereinbefore described, free and clear of incumbrances;

"And if the jury shall further find that whereas in truth and in fact the said Ernest Lovan and the Ernest Lovan Investment Company, or either of them, was not then and there the owner of the lands in Morgan county, Missouri, hereinbefore mentioned and described, free and clear of all incumbrances whatsoever, but that the said land and every part thereof was then and there incumbered with a valid and subsisting mortgage lien of fourteen hundred dollars, by virtue of two deeds of trust both dated July 3, 1909, executed by J. E. Snodgrass to J. E. Berry to secure the payment of two promissory notes of even date for six hundred dollars and eight hundred dollars, respectively, the former due in nine months after its date, the latter due one year after its date, both notes drawing interest at the rate of seven per cent per annum, said mortgages being of record in the office of the recorder of deeds of Morgan county, Missouri, in

Book 21, page 396, all of which he, the said Ernest
Lovan, then and there well knew;

"And if the jury further find and believe from
the evidence that the said Ernest Lovan, by means of
the said deception and false and fraudulent state-
ments and pretenses, if any, so made as aforesaid, then
and there unlawfully, knowingly and fraudulently and
feloniously did obtain of and from him, the said
George F. Hannay, the said shares of the capital stock
of the Palace Stable Company and the said shares of
the capital stock of the Fashion Stable Company; as
above described, and the said property was of the
value of thirty dollars or more, then you will find the
defendant guilty as shown in the information, and
assess his punishment at imprisonment in the State
Penitentiary for a term of not less than two years
and not more than five years."

The use of the word "whereas" in the negative
part of this instruction is awkward and meaningless.
Still, by using before it the words, "If the jury shall
further find that," the defect pointed out by this court
in State v. Steele, 226 Mo. 583, cited by defendant, is
cured.

Defendant offered, and was refused, an instruc-
tion directing the jury to acquit, on the theory that
there was a failure of proof. The information de-
scribes the land in Morgan county as follows:

"The west half of southeast quarter and south-
east quarter of northeast quarter and the northeast
quarter of the southeast quarter, all in section 10,
township 40, range 19, containing 160 acres; and the
east one half of the northeast quarter of section 15,
and the southeast quarter of the southeast quarter of
section 10, township 40, range 19, containing 120 acres,
all in Morgan county, Missouri;" making in all 280
acres.

Hannay testified that defendant told him that he
owned 280 acres in Morgan county, Missouri, free and

clear of incumbrances, and gave him a list of the lands owned by him, all of which lands he said were clear and free of incumbrances, except those designated otherwise in the list, and that he copied this list into the contract read in evidence. In that contract appears this item in the list of lands: ''280 acres, Morgan county, Missouri, $3500.'' Hannay further produced and put in evidence two deeds, one for 160 acres and one for 120 acres, in Morgan county, Missouri. The description in the two deeds taken together correspond to the description in the information. Hannay testified that defendant handed him these two deeds, in response to his request for a description of the 280 acres mentioned in the list in the aforesaid contract, and told him that they covered that property. All this testimony was strenuously objected to as not sustaining the description of the property in the information, and also because these deeds were handed to Hannay by defendant after the transaction complained of was completed. The deeds were admitted for the sole purpose of establishing a description of the 280 acres. We think the court committed no error in overruling the objections, and consequently no error in refusing the instruction offered by defendant. The introduction in evidence of the two deeds and the testimony therewith tended to establish the identity of the 280 acres mentioned in the contract, and the subject of the alleged representations, with the land described in the information.

III. The testimony for the State developed the fact that at the time when the alleged representations were made by defendant concerning the Morgan county land the same was incumbered by two deeds of trust of several hundred dollars each. Defendant testified that he told Hannay of the existence of these two incumbrances, and told him, further, that he had an arrangement with the holder of them, Mr. J. J. Swof-

ford, by which he could get them at any time and clear·
them.   Mr. Swofford testified that he held the two
deeds of trust on this Morgan county land, and that
they had been put up with him by defendant as col-
lateral for a loan.   Defendant's counsel asked Swof-
ford, in substance, whether he had a conversation with
defendant with reference to surrendering these notes.
Objection by the State was sustained.   Defendant
urges that this ruling was error materially affecting
his rights.   The State contends that defendant has no
standing to urge this assignment, because he made no
formal offer to show such arrangement to take up the
notes as defendant claimed, and further that, even if
there had been such an arrangement, it would be im-
material.   The defendant's counsel sufficiently indi-
cated their purpose, and the court so understood it.
The ruling of the court was put upon the ground that
such arrangement was immaterial inasmuch as it had
not been carried out.   We think the objection to this
line of inquiry should have been 'overruled.   If an
arrangement existed by which defendant could at any
time clear the lien of these deeds of trust, that fact
would be material upon the question of intent.   De-
fendant had testified, without objection by the State,
that he had told Hannay that he had an arrangement·
with Swofford by which he could at any time get these
notes and deeds of trust.   We think testimony upon
this point from Swofford would be competent, in cor-
roboration of the testimony of defendant.   If defend-
ant pledged these mortgages to Swofford, it is fair to
assume that he owned them.   Suppose he had not
pledged them, but was holding them as owner—it is
conceded that he had title to the land—and had said,
under such conditions, that the land was clear of in-
cumbrances, it would hardly be claimed that such
facts could not be shown upon the question of criminal
intent.   Yet, if he had an agreement by which he could
certainly clear the land of these mortgages, although

they were hypothecated, and intended so to do, the effect would be practically the same so far as the facts related to a criminal intent. The ruling of the court was prejudicial error, and must result in a reversal of the judgment.

IV. In his opening statement the prosecutor detailed to the jury certain facts which he proposed to prove, concerning another transaction involving defendant, and of a fraudulent nature. Objections by defendant were overruled. A witness was permitted to testify to the facts of this transaction, against defendant's objection. After the testimony was in, the court ruled it incompetent, and withdrew it, by verbal direction, from the jury. The unfairness to defendant of such proceeding is obvious. The evidence was damaging to the character of the defendant. The court, by this ruling and direction, withdrew it from the jury in form, but was it within the court's power to withdraw it from their consideration in fact? It is easy to believe that a man who has done wrong once will do wrong again. The converse of this is recognized by the law when it permits proof of good character to be given in evidence in favor of a defendant. Out of consideration for the defendant, our law, whether wisely or not, refuses to permit the State, in making out its case, to give evidence of bad character, or of former crimes committed by the defendant; yet knowledge of bad character and former offenses is exceedingly persuasive to belief in the truth of the present charge. It is practically impossible for a man sitting in judgment to exclude from the final make-up of his mind facts which have lodged there, even if the court gravely tells him that such facts should not have been disclosed, and tells him, further, not to consider them. The court does not tell him that such statements are not true. The objections by counsel for defendant probably convince him that they are true. He

may believe that the witness has testified truthfully to facts which the court tells him he should not consider. So that to the juror it must appear that he is directed to exclude from consideration the truth, and a truth of a most convincing character. He is unable to obey this direction if he would. Hence, so long as this rule of exclusion is the law, it is incumbent upon the court to see to it that such evidence does not get before the jury. We have suggested what we regard as the proper course in such case in State v. Hyde, 234 Mo. 200. In the case at bar it would have been a simple matter, when the objection was first made to the opening statement, to send the jury out, get a full statement from the prosecutor, and rule on the question. Whether a case should be reversed where this is the only error committed, we need not decide, as the ruling on a retrial will no doubt conform to the views expressed above.

V. It is finally urged that the contract read in evidence does not sustain the charge in the information. It was argued that the written contract does no more than bind the defendant to a guaranty of title, and does not amount to an assertion of present clear title. If the case depended solely upon the written contract, this point might be worthy of serious consideration, but the prosecuting witness swears that the defendant assured him verbally, before the written contract was drawn, that the land was unincumbered.

The rule applied in civil cases in actions upon written contracts, namely, that prior conversations and oral agreements are merged in the writing, can have no application here. Fraud is not merged in a written contract. [Gooch v. Conner, 8 Mo. 391.] There is no question here as to the contract between the parties or that the writing does not truly state it. Where the written contract itself was brought about by fraud, proof of that fraud may be in parol.

When the parol testimony was offered, defendant did not object, presumably because counsel saw no grounds for objection. In our judgment, none existed.

Because of the error committed in ruling out the testimony of witness Swofford, the judgment is reversed and the cause remanded.

' *Brown, P. J.,* and *Kennish, J.,* concur.