**STATE of Missouri, Respondent,**

v.

**Karl F. WEBER, Appellant.**

No. 45589.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1957.

J. K. Owens, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

On January 10, 1956, the defendant Weber was found guilty by a jury in the Jackson County Circuit Court on a charge of violating Section 561.450 RSMo 1949, V.A.M.S., and his punishment was fixed at seven years' imprisonment in the State Penitentiary. From the sentence imposed, defendant appealed.

Defendant briefed three points: First, that the evidence was insufficient to sustain a conviction. Second, that the trial court unduly restricted the cross-examination of the prosecuting witness. Third, that the trial court erred in giving one instruction and in refusing another.

It is necessary for an understanding of the case to relate not only the evidence but also to refer to the charge as made by the indictment. Section 561.450, supra, is sometimes referred to as the confidence game statute. The section in so far as applicable to the present case reads: "Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent representation or statement or pretense, or by any other means or instrument or device, commonly called 'the confidence game,' * * * shall be deemed guilty of a felony and upon conviction thereof be punished by imprisonment in the state penitentiary for a term not exceeding seven years."

The indictment reads in part as follows: that Karl F. Weber "on the 10th day of February, 1955, did with felonious intent to cheat and defraud, obtain from John W. Schleicher, money in the amount of Nine Hundred and Sixty ($960.00) Dollars, lawful money of the United States, by means of a trick, false and fraudulent representations, statements and pretenses and by confidence game in that the said Karl F. Weber, on the 10th day of February, 1955, held out and pretend that he was the owner of the property at 5309 Forest Avenue, Kansas City, Jackson County, Missouri, and was desirous of leasing said property and that in consideration of obtaining a tenant for said property he would make certain repairs, improvements and alterations on said property at the said Karl F. Weber's expense and as a direct result of said trick and said false, fraudulent statements and pretenses and confidence game the said Karl F. Weber did unlawfully and feloniously receive of and from the said John W. Schleicher, the sum of Nine Hundred and Sixty ($960.00) Dollars, and the said John W. Schleicher, being deceived thereby and relying upon the aforesaid trick, false and fraudulent statements, pretenses and con-

fidence game, did give to the said Karl F. Weber the sum of Nine Hundred and Sixty ($960.00) Dollars; Whereas, in truth and in fact the said Karl F. Weber was not desirous of leasing said premises at 5309 Forest Avenue, Kansas City, Jackson County, Missouri, nor did he intend to make any repairs, improvements or alterations at his own expense all of which fact the said Karl F. Weber well knew; against the peace and dignity of the State."

The evidence introduced by the State (defendant offered no evidence) supports the following statement: The prosecuting witness, John W. Schleicher, an employee of the Kansas City Market, placed an advertisement in a newspaper for an apartment. The defendant Weber answered the "ad" and Schleicher and his wife on February 5 or 6, 1955, went to the home of the defendant at 5309 Forest Avenue in Kansas City, Missouri. Weber's house had been made into apartments. The Schleichers were shown the apartments, which, according to Weber, could be rented for $960 per year. Weber informed the prospective renters that he would put in a partition so as to enable Schleicher to sublet a portion of the rented premises. Weber further stated that the partition could be constructed before March 1, the beginning date of the rental year, if Schleicher would pay a year's rental in advance. On February 10, 1955, a lease was prepared and signed by the parties whereupon Schleicher paid Weber the sum of $960. About a week later, Weber called Schleicher and inquired when Schleicher was going to pay Weber $319 to have the partition built. Schleicher informed Weber that the understanding was that he, Weber, was to bear that expense. Weber, thereupon, informed Schleicher that it was apparent that they could not get along and, if he would come to his place, he would cancel the lease. Schleicher went to Weber's home and Weber had a cancellation written on the lease and informed Schleicher that for one month's rent, he would cancel the lease.

Schleicher agreed but after the cancellation was signed, Weber refused to refund any of the $960, saying he would refund when he leased the apartment. Weber, though often requested to do so, did not refund any of the $960.

For the purpose of showing an intent to defraud on the part of Weber, the State introduced evidence that four other persons had been cheated in the same or similar manner by Weber. It was shown that between the dates of February 10, 1955, and April 18, 1955, Weber collected $3,826 from prospective renters and not one of the five persons to whom the apartment had been rented was ever permitted to occupy the premises. Of this sum, $40 was refunded to one of the renters. Weber's usual scheme was to call the renter, after the lease had been signed and he had collected rent in advance, and to demand money for improvements. To illustrate his method, we shall refer to two of the parties and the manner in which they were induced to cancel the lease.

Mrs. Edith Parson, a bookkeeper at the Blue Cross offices, met Weber on February 15, 1955, at his home to rent an apartment. She signed a lease on March 5 and paid Weber $450 which was one-half the amount for a year's rent. On March 7, Weber called Mrs. Parson and demanded that she pay $399, the cost of a partition. When this was refused, Weber suggested a cancellation of the lease. No money was refunded when the lease was canceled. A promise was made that a refund would be made when the apartment was rented.

A Mr. Frank Mandl, a mechanic, began negotiations with Weber for the rental of an apartment on April 10, 1955, when Mandl paid a "down payment of $25.00." A lease was signed and Weber was paid $891 by check on April 12, a year's rent in advance. A few days later, Weber demanded that Mandl install and pay for storm windows and screens. Mandl wanted the apartment because it was nearby a school his son was to attend. He, there-

fore, agreed to have the windows and screens installed. Weber, being thus forestalled in his attempt to bring about a cancellation of the lease, then demanded that Mandl have the house painted at a cost of about $500. Mandl was given to understand that he could not move into the apartment until the house was painted. The Mandls never occupied the apartment and Weber did not refund any of the money he received. The evidence showed that two other persons were thus defrauded. What has been stated is sufficient to demonstrate that Weber had devised a clever trick and scheme to defraud. It was lucrative while it lasted but diabolical in its design and it is not surprising that the jury assessed the maximum penalty.

The defendant's theory in contending that the evidence was insufficient to sustain a conviction is that the State failed to prove any misrepresentation by him of any existing fact; that all of the false representations were "as to happenings of future fact and not based upon any present or past fact." That argument would have some merit if Weber had been charged with an offense of obtaining property by false pretenses under Section 561.370 RSMo 1949, V.A.M.S. State v. Houchins, Mo., 46 S.W.2d 891; State v. Craft, 344 Mo. 269, 126 S.W.2d 177; State v. Neal, 350 Mo. 1002, 169 S.W.2d 686.

■ We need not in this case determine whether the evidence was sufficient to sustain such a charge because Weber was charged with a violation of Section 561.450, supra, a portion of which we have quoted above. Defendant did in fact make false statements to induce his victims to sign a lease and to part with their money. For example, he informed the prospective tenants that he had an apartment for rent when in truth and in fact he had no intention of renting an apartment. Further, he told them he contemplated making certain alterations when in fact he had no intention of doing so. But still worse, he intended to use the question as to who was to

pay for making the alterations as a wedge to compel cancellation of the lease and to keep the money received for rent. He tricked his victims into signing a lease to obtain money when in fact he had no intention of abiding by his contract. Such a scheme is covered by Section 561.450, supra. It says, in substance, that every person who, with intent to cheat and defraud, shall obtain any money by means or by use of any trick or deception, or by any other means or instrument or device, shall be deemed guilty of a felony. Note what is said in 35 C.J.S., False Pretenses, § 32, p. 675: "Statutes in several jurisdictions are directed against the obtaining of money or property by the form of swindling known as the 'confidence game.' This term cannot easily be defined so as to cover all the cases falling within it, since schemes devised for the swindling of others 'are as various as the mind of man is suggestive.' Generally speaking, a confidence game is any trick, device, or swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler, or any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money or property by taking advantage of such confidence."

Weber, in this case, won the confidence of Schleicher sufficiently to have obtained from him $960 even though the parties were strangers before the negotiations began for the rental of the apartment.

■ The purpose of the statute, Section 561.450, supra, "was to provide for a class of false representations not included in some other section dealing with the subject of the ordinary false representations." State v. Wilson, 223 Mo. 156, 122 S.W. 701, loc. cit. 704. See also Rucker v. State, Okl.Cr.App., 195 P.2d 299; People v. Brand, 415 Ill. 329, 114 N.E.2d 370.

■■ We rule the indictment sufficiently charged an offense under Section 561.-450, supra, and that the evidence amply supported the verdict of guilty.

■ Defendant said the trial court erred in not allowing him to show by cross-examination that Schleicher did not rely on Weber's statements but that he relied upon his attorney in executing the contract. Schleicher did have an attorney examine the lease as to its form and provisions. That was in evidence. However, there was no basis for the complaining witness to suspect what Weber had in mind. The lease and its provisions were not objectionable. This prosecution was not based on any fraud appearing in the lease. It was the secret intent and scheme which were not apparent and could not be determined from the lease that constituted the basis of the crime charged. If Weber had acted honestly and permitted Schleicher to occupy the apartment and carried out the provisions of the lease, no wrong would have resulted. The trial court was correct in the ruling made. Schleicher, as well as his attorney, was misled by Weber's trick and scheme.

■ In the last assignment, defendant complained that instruction No. 2 given by the court authorized a conviction on future promises and performances and therefore the instruction was erroneous. The instruction in this case followed the charge in the indictment and was supported by the evidence. What we have said on the sufficiency of the indictment and the evidence is a complete answer to this point.

■ Coupled with the last assignment is a complaint that the trial court erred in not giving an instruction (A) which in effect was that defendant could not be convicted if the representations made "were for future facts and happenings." This instruction was rightly refused. Much of what Weber promised to do, as shown by the evidence, did pertain to the future. However, that was a part of the scheme to defraud. The evidence was that promises were made for the purpose of obtaining money with Weber having no intention of carrying out the contract or promises. In State v. Neal, 350 Mo. 1002, 169 S.W.2d

686, loc. cit. 696(15), this court said, "As pointed out at the beginning of this opinion, it is incorrect to say unqualifiedly that the jury cannot convict a defendant on fraudulent promissory representations—when they are mingled with fraudulent representations of past or present facts. For the jury may consider and rely on the representations as a whole." That was a prosecution for false pretenses. It is evident that the court properly refused to give instruction A offered by the defendant.

Other matters of record not considered in the opinion have been examined and we find no error.

The judgment is affirmed.

All concur.