**STATE of Missouri, Respondent,**

v.

**Karl F. WEBER, Appellant.**

**No. 45782.**

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

J. K. Owens, Kansas City, for appellant.

John M. Dalton, Atty. Gen., W. H. Bates, Sp. Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Defendant was convicted under the "confidence game" statute, Section 561.450 (all references to sections are to RSMo 1949 and V.A.M.S.) and sentenced to seven years in the penitentiary. On this appeal he first contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence for the assigned reason that the state failed to make a submissible case under Section 561.450.

That contention has been ruled adversely to defendant in our recent case of State v. Weber, Mo.Sup., 298 S.W.2d 403. In that case instant defendant was charged and convicted of a violation of Section 561.450 upon a showing of substantially the same facts and circumstances as shown in the instant case. The only substantial difference between the two cases is that in the instant case the party from whom it was charged defendant obtained $916 was one Frank J. Mandl, while in the prior case the party from whom it was charged defendant obtained $960 was one John W. Schleiker, and, in the prior case, State v. Weber, supra, the testimony of the Mandls and of others was used to show defendant's intent to defraud Schleiker, while in the instant case the testimony of Schleiker and others was used for the purpose of showing defendant's intent to defraud Mandl. We

determined in that prior case that the indictment there "sufficiently charged an offense under Section 561.450, supra, and that the evidence amply supported the verdict of guilty." State v. Weber, supra, 298 S.W.2d 406 [4, 5].

While we need not, therefore, concern ourselves further with whether there was a submissible case under Section 561.450, nevertheless we shall briefly set forth the salient facts shown by the state's evidence. Mr. and Mrs. Mandl advertised for an apartment and, in response to defendant's telephone call, went to 5309 Forest in Kansas City where defendant showed them a duplex. Defendant told them that if they would rent it he would install at his cost a partition which would separate the steps leading upstairs from the downstairs apartment, and that he would put a light at the top of the steps. A written lease was signed which referred to the partition and the light and also referred to the fact that screens and storm windows were to be installed which defendant had priorly said he would take care of. The rent agreed upon and called for in the lease was $916 for the apartment and a garage, of which amount the Mandls paid $25 in cash and, on April 23, gave defendant their check for an additional $891, which check was endorsed by Weber and paid by the bank. Their occupancy under the lease was to begin May 12, 1955. Shortly after April 23, defendant talked with Mrs. Mandl and requested that the Mandls furnish $350 to pay for the screens and storm windows mentioned in the lease. Mrs. Mandl at the time would not agree to such, but two or three days later called defendant and agreed to pay for the storm windows and screens. Shortly thereafter, Weber again called the Mandls and wanted them to pay $500 to paint the house. House painting had not theretofore been mentioned. The Mandls refused to so agree. Weber then suggested that under the circumstances they might as well agree to cancel the lease and that he would return their money. The Mandls went to defendant's apartment for such purpose. Defendant requested that they sign a release, in effect cancelling the obligations of the parties under the lease theretofore executed. Mrs. Mandl refused unless the money paid by them was first returned. Defendant then suggested that he would need to incur another $5 charge for an additional newspaper ad and the Mandls agreed to pay him $5 therefor. No release or cancellation was signed but defendant promised to return their money. But, although requested to do so as least three times, he had failed to so do at the time of trial. On the occasion of one demand, defendant stated that he was ill and did not have the money; on another, that he would return the money as soon as he rented the apartment; and on another, that he wanted the Mandls to stop bothering him.

As indicated heretofore, four other persons testified that they had been dealt with by Weber in the same or similar manner. In fact, the evidence showed that between February 10, 1955, and April 23, 1955, Weber collected some $3,826 from persons to whom he ostensibly had rented the apartment in the same or similar manner and under the same or similar circumstances as he ostensibly had rented to the Mandls. After he had collected from each a year's or one-half year's rent, he would call the respective tenant, engage in some sort of argument, and suggest that the lease be cancelled. He then would make some agreement to withhold a month's rent or the cost of an ad and to return the balance of the rent paid. The trouble was that in no instance did he return any money.

A grand jury returned two indictments against the present defendant; one upon which the prosecution in State v. Weber, supra, was based, and the other formed the basis for the instant case. The language of the two indictments was identical except for the dates, the name of the person from whom the money was obtained, and the amount of money so obtained.

The indictment in the instant case charged that defendant "on the 12th day of April, 1955, did with felonious intent to cheat and defraud, obtain from Frank J. Mandl, money in the amount of Nine Hundred and Sixteen ($916.00) Dollars, lawful money of the United States, by means of a trick, false and fraudulent representations, statements and pretenses and by confidence game in that the said Karl F. Weber, on the 12th day of April, 1955, held out and pretended that he was the owner of the property at 5309 Forest Avenue, Kansas City Jackson County, Missouri, and was desirous of leasing said property and that in consideration of obtaining a tenant for said property he would make certain repairs, improvements and alterations on said property at the said Karl F. Weber's expense and as a direct result of said trick and said false, fraudulent statements and pretenses and confidence game the said Karl F. Weber did unlawfully and feloniously receive of and from the said Frank J. Mandl, the sum of Nine Hundred and Sixteen ($916.00) Dollars, and the said Frank J. Mandl, being deceived thereby and relying upon the aforesaid trick, false and fraudulent statements, pretenses and confidence game, did give to the said Karl F. Weber, the sum of Nine Hundred and Sixteen ($916.00) Dollars, Whereas, in truth and in fact the said Karl F. Weber was not desirous of leasing said premises at 5309 Forest Avenue, Kansas City, Jackson County, Missouri, nor did he intend to make any repairs, improvements or alterations at his own expenses all of which fact the said Karl F. Weber well knew; against the peace and dignity of the State."

While State v. Weber, supra, was pending in this court, and shortly before the trial of the instant case, the assistant prosecuting attorney filed a substitute information which, in pertinent part, charged that defendant "on the 12th day of April, 1955, at the County of Jackson, State of Missouri, did with felonious intent to cheat and defraud one Frank J. Mandl, falsely state and pretend to the said Frank J. Mandl that he was desirous of leasing certain property located at 5309 Forest Avenue, Kansas City, Jackson County, Missouri, to the said Frank J. Mandl, and that in consideration of obtaining the said Frank J. Mandl as a tenant for said property, he, the said Karl F. Weber would make certain repairs, improvements and alterations on said property at the said Karl F. Weber's Expense, and as a direct result of said false and fraudulent statements and pretenses, the said Karl F. Weber did unlawfully and feloniously receive of and from the said Frank J. Mandl, the sum of Nine Hundred and Sixteen ($916.00) Dollars, and that the said Frank J. Mandl was deceived thereby and relied upon the aforesaid false and fraudulent statements and pretenses, and being so deceived thereby and relying thereon did give to the said Karl F. Weber the sum of Nine Hundred and Sixteen ($916.00) Dollars; Whereas, in truth and in fact the said Karl F. Weber on the 12th day of April, 1955, was not desirous of leasing said premises to the said Frank J. Mandl, and did not intend to make any repairs, improvements or alterations at his own expense, all of which facts the said Karl F. Weber well knew; against the peace and dignity of the state."

The state's instruction 2 hypothesized the facts in the language set forth in the substitute information and directed, upon a finding of those facts, to find defendant guilty of "obtaining money by false pretenses and confidence game and so find in your verdict." Instruction 8 provided in part, "If the jury find the defendant Karl F. Weber guilty of Confidence Game as charged in the Information, they may use the following form: We, the jury, find the defendant Karl F. Weber guilty of Confidence Game as charged in the Information and assess his punishment at ——— years in the State Penitentiary." The verdict returned by the jury was in part: "We, the jury, find the defendant Karl F. Weber, guilty of confidence game as charged in the

information, and assess his punishment at Seven (7) years in the State penitentiary."

Defendant contends, in effect, that the court's instructions permitted the jury to find defendant guilty of, and assess punishment for, "confidence game" when the information did not charge the "confidence game," and that therefore the instructions and the verdict were broader than the information and the 7-year sentence was in excess of the maximum punishment provided for any crime charged in the information. Defendant says that while the felony known as "confidence game" may have been sufficiently and adequately charged in the indictment returned by the grand jury (and in State v. Weber, supra, we held that an identical indictment did sufficiently and adequately charge that crime), nevertheless, the substitute information was not intended to and did not charge the crime provided for by Section 561.450; and that, if it charged any crime at all, it was the offense of obtaining money by false pretenses as defined in Section 561.370.

Section 561.370 (repealed, effective 90 days after May 31, 1955) at the time in question provided in pertinent part: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing or by any other false pretense, obtain the signature of any person to any written instrument or obtain from any person any money, * * * shall upon conviction thereof be punished in the same manner and to the same extent as for feloniously stealing the money, property or thing so obtained."

Section 561.450 provides in pertinent part: "Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called 'the confidence game,' * * * shall be deemed guilty of a felony

and upon conviction thereof be punished by imprisonment in the state penitentiary for a term not exceeding seven years."

Section 561.370, supra, provided a maximum punishment of five years, whereas the maximum punishment under Section 561.-450, is, as stated, seven years. And, as noted, instant defendant received seven years, the maximum punishment.

It is true, as defendant contends, that the substitute information, unlike the indictment, did not contain the words "confidence game." It is likewise true that the substitute information did not, as did the indictment, contain the words "by means of a trick, false and fraudulent representations, statements and pretenses and by confidence game." The quoted words obviously were taken almost literally from Section 561.450, and, by the use of them, the indictment made it abundantly clear that the defendant was charged under Section 561.450.

We do not know, and even by resorting to speculation and conjecture we cannot imagine, why an information was substituted for the indictment when the indictment clearly and specifically charged defendant with a violation of Section 561.450, the confidence game statute, and when the substitute information, at best, made it less clear that defendant was charged under that section. Any idea that it was intended thereby to change the charge against defendant is negatived by the fact that under Section 545.300 and Supreme Court Rule 24.02 (the provisions of which the prosecuting attorney must have known) the state could not have validly substituted an information which would have changed the crime with which the defendant had been charged in the indictment, and by the further fact that both the indictment and the substitute information, as disclosed by the record, contained the words on their fronts, respectively, "charged with confidence game." But whatever the purpose may have been, the sole question here presented by defendant is whether the substitute in-

formation validly and sufficiently charged the offense proscribed by Section 561.450.

■ An examination of Section 561.450, supra, discloses that in so far as here pertinent the gist of the offense described therein is obtaining money from another with intent to cheat that one, by various acts and methods there set forth disjunctively, provided that the commission of any one or more of such acts or the use of any one or more of such methods constitutes, under the circumstances of a given case, what is "commonly called 'the confidence game.'" That is to say, for example, if one feloniously obtains money by a trick or deception, which trick or deception is commonly called "the confidence game," he has committed the offense provided for in the part of the section here pertinent; or if one feloniously obtains money by a false or fraudulent representation, which representation is such that its use under the circumstances shown in evidence constitutes what is commonly called "the confidence game," he has violated the provisions of Section 561.450; or if one feloniously obtains money by a false statement or pretense, which statement or pretense as used in a given case constitutes what is commonly called "the confidence game," he has violated the section; or if one feloniously obtains money by any other means or instrument or device, the manner of the use of which constitutes what is commonly called "the confidence game," he has violated the section. It is clear that an indictment or information sufficiently charges the offense described in Section 561.450 if it contains allegations sufficient to charge any one of the disjunctively stated prohibited acts. State v. Hartman, 364 Mo. 1109, 1117, 273 S.W.2d 198, 204 [5, 6].

Now, the defendant's statements, pretenses, and representations as they were made and used in the instant case did constitute what is "commonly called 'the confidence game'" within the meaning of Section 561.450. That, as noted, was ruled in State v. Weber, supra. Consequently, it remains to determine only whether the substitute information sufficiently charged one or more of the proscribed acts set forth in the section. As noted, Section 561.450 provides in part: by use of a "false and fraudulent representation, or statement or pretense." The substitute information charged that Weber *falsely stated and pretended* to Mandl that he desired to lease the property and that if Mandl would rent it, he (Weber) would improve and alter it at his (Weber's) expense. The substitute information did not use the words "by means or by use of" in charging the effect of the false statement and pretense charged, but it did charge that "as a *direct result* of said false and fraudulent statements and pretenses" Weber unlawfully and feloniously received $916 from Mandl. Certainly, "as a direct result of" is an effective way of expressing the language of the section, "by means or by use of." The information further charged that Mandl was deceived by and relied on the *false and fraudulent statements and pretenses and, by reason thereof*, delivered the $916 to Weber, and that Weber did not in fact desire to lease the premises and did not intend to make any improvements or alterations at his expense.

■ We are of the view that the gist of the charge contained in the substitute information was the same as the gist of the charge contained in the indictment, even though the words "confidence game" were not contained in the substitute information. We are also of the view that both the indictment and the substitute information effectively charged that Mandl's money was feloniously obtained *by means of or as a direct result of false and fraudulent statements and pretenses* which are among the acts proscribed by Section 561.450. Inasmuch as the acts charged, under the evidence, constituted the effectuation of a defrauding "commonly called 'the confidence game,'" State v. Weber, supra, it must follow that the substitute information properly and sufficiently charged the crime of which defendant was convicted, that the

instructions were proper, and that the verdict was responsive to the information.

The following are cases wherein informations or indictments somewhat similar in their essential allegations to the substitute information in the instant case have been held to sufficiently charge a violation of present Section 561.450: State v. Donaldson, 243 Mo. 460, 465, 472, 148 S.W. 79, 80, 83; State v. Martin, 226 Mo. 538, 547, 126 S.W. 442, 444; and State v. Lovan, 245 Mo. 516, 524, 530, 151 S.W. 141, 144.

The record matters which we examine as of course disclose no error prejudicial to defendant.

Judgment affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.