## Sweeton v. Commonwealth.

(Decided September 29, 1925.)

### Appeal from Harlan Circuit Court.

1. False Pretenses—Necessary Characteristics of Securing Signature to Writing by "False Pretense" Stated.—To constitute offense of securing signature to writing by "false pretense," contrary to Ky. Stats., section 1208, false statement is not required to be sufficient to influence man of ordinary firmness, but it should be material and of such nature as to form some basis for action by injured party, and should be made with intention to commit fraud.

2. False Pretenses—False Statement that Surety on Note Wished Another who Signed as Surety to Sign Held Not Sufficient to Support Conviction for Securing Signature to Writing by "False Pretense."—That person falsely stated that surety on note requested another person to sign as surety, and so secured his signature thereto, held not sufficient to warrant conviction under Ky. Stats., section 1208, for obtaining signature to writing by "false pretense."

G. J. JARVIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge McCandless—Reversing.

P. B. Sweeton was found guilty of obtaining the signature of another person to a writing by false pretense, as denounced by section 1208, Kentucky Statutes.. Several questions are raised on this appeal, but the only one we deem it necessary to consider is whether the verdict is supported by the evidence.

The facts are: Defendant negotiated for the purchase of a pair of mules with one Sparks, who filled out a note for $334.00 as the purchase price and agreed, if defendant would procure sufficient sureties thereon, to accept it in payment for the mules.

Defendant procured the signatures of G. W. Baker and Jess Gilbert as such sureties, delivered the note to Sparks and received the mules. Later defendant left the state and it seems sold the mules, and this prosecution was instituted, based on the charge that he had obtained the signature of Jess Gilbert to the note by falsely stating to him that G. W. Baker had sent him to Gilbert with a request for Gilbert to sign the note, when in fact Baker had not made such request and had not sent him to Gilbert.

Gilbert testified that Sweeton brought the note to him at his house and said, "I have got a note here that G. W. Baker sent me up here to tell you to sign." That he took the note and looked at it and saw that it was in Baker's handwriting, and signed it, thinking Baker had sent it to him; that he and Baker were good friends and he thought he was accommodating Baker was why he signed it; that he would not have signed it but for defendant's statement that Baker had requested that he should do so.

On cross-examination he stated: "He (Sweeton) said to me when he came up, he sit there and talked to me a long while about Brown putting him out of work, being knocked out of work; he first said something about could I furnish him any hauling to do, and I told him that I had no more work than what my teams were doing; then he presented the note and said that G. W. Baker sent him and that for me to sign the note." He admits that Sweeton explained to him that he (Sweeton) was the principal and was to get the benefit of the note and that he understood that he and Baker were both sureties and assuming liability for Sweeton; that he (witness) and

Baker had dissolved partnership and that he was under no obligations to sign the note on his request; that he would not have signed it if he had not seen Baker's name thereon, though he also claims he would not have signed it with Baker's signature on it except for defendant's statement that Baker had requested him to do so.

Baker denies having sent defendant to Gilbert or having authorized him to request Gilbert to sign the note, and Sweeton contradicts them in this and says that Baker told him that Gilbert would sign it if asked and that he repeated this to Gilbert.

To constitute an offense under the statute the false statement is not required to be sufficient to influence a man of ordinary fairness to act, but it should be material and of such a nature as to form some basis for action by the injured party and should be made with the intention to commit a fraud.

Here Gilbert was fully informed as to the nature of the note and the status of the parties; he was told that Sweeton was principal and would receive all the benefits arising from it and that Baker had no interest in the proceeds. Sweeton did not quote Baker as recommending him in any way or as certifying to his character. It is not claimed that he represented that Baker, through affection, friendship or otherwise, was personally interested in Sweeton's procuring the loan and desired Gilbert to sign the note on that account, but the statement would rather indicate that Baker's interest in procuring additional surety was to reduce his own liability by having others to join with him in its assumption. The statement could not have influenced the transaction from a financial standpoint. The most that can be said of it is that Gilbert was willing to share with Baker the risk of a loss on the note if Baker so desired, but would not have signed the note except for the fact that he relied on the alleged request of Baker for him to do so. Considered in this light the statement would not have constituted an inducement for Gilbert to sign. If he was willing to incur liability in order to favor Baker it can hardly be said that he has been defrauded even though Baker had not requested it. At any rate the alleged statement is so illusory that we do not think it sufficient to form the basis of a prosecution of this character.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.