STATE of Missouri, Respondent,

v.

Glen D. SCHMIDT, Appellant.

No. KCD 27442.

Missouri Court of Appeals,
Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer
Denied Dec. 8, 1975.
Application to Transfer Denied
Jan. 12, 1976.

William E. Shull, Robert G. Duncan, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant appeals his conviction of obtaining a check by means of the "confidence game" under § 561.450, RSMo 1969. After finding him guilty the jury assessed punishment at one year imprisonment and a fine of $1,000.

The jury could have reasonably found from the evidence that Robert Quick operated a livestock sale barn in Oregon, Missouri. For about five years prior to April 17, 1970, Quick and the defendant had established a practice by which defendant purchased certain cattle and Quick would reimburse defendant for the purchase price. The cattle would then be delivered to Quick's Sale Barn for sale. After the sale at the barn, defendant and Quick would then divide equally any gain or loss.

Quick testified that on April 17, 1970, the defendant came to him and told him he had purchased 168 head of cattle from four farmers—Valdron Hannah, John Price, Dale Owens and Curtis Pitzenbarger—for a total of $30,360. Quick stated the defendant told him he had already paid for such cattle and he needed a check from Quick in order to cover such amount. Quick gave the defendant a check in the amount of $30,360. This check was dated April 17, 1970. When this check was admitted in evidence it showed a stamp on its face bearing the notation: "Paid April 20, 1970, Citizen's Bank, Oregon, Missouri." The check also bore the endorsement of the defendant.

Quick testified the sale at the Sale Barn was held on Thursday afternoon. The defendant had told him the cattle which he had already purchased were to be delivered to the Sale Barn on the Wednesday and Thursday following the Friday on which Quick paid the defendant for the 168 head. When no cattle arrived on the following Wednesday, Quick began making inquiries and learned the defendant was in the hospital with an apparent heart attack. None of

the cattle were ever received by Quick nor was he ever given any explanation as to why the cattle were not delivered.

The four people from whom the defendant stated he had purchased the cattle all testified. Mr. Hannah stated he had been approached about April 17 by the defendant concerning the sale of some cattle. He said after negotiations were completed he had agreed to sell defendant 35 head and received a down payment of $100. He stated, however, that no one ever came to pick up the cattle nor was he paid the balance of the purchase price. Mr. Price stated he had been contacted by the defendant and had agreed to sell some cattle to him but he had never been paid any amount and none of the cattle were ever delivered by him. The other two persons, Mr. Owens and Mr. Pitzenbarger, both testified they had never talked with the defendant about the sale of any cattle at any time near April 17, 1970.

The defendant's evidence consisted of three witnesses who testified they had either picked up cattle for the defendant or had accompanied him for the purpose of picking up cattle prior to April 17, 1970, to be delivered to the Quick Sale Barn. One witness testified he had gone to defendant's home on April 23, 1970, to meet the defendant to pick up some cattle, but on arrival learned he was hospitalized with a heart attack.

The defendant then sought to show by an accountant, George Williams, that on April 17, 1970, Quick was actually indebted to defendant in an amount in excess of the $30,360. This attempt was refused by the trial court and will be examined in more detail presently.

Defendant's first complaint is the failure of the trial court to instruct upon the question of good character as defendant contends was required by Rule 26.02(6). That Rule requires the court to "instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict which shall include whenever necessary the subject of good character and rea-

sonable doubt." The defendant argues that Quick stated he had dealt with defendant for a number of years and had always found him to be honest up to the instance involved here. The defendant also brought out from other witnesses the fact the defendant had dealt with them honestly for a period of time. "The term 'whenever necessary,' as used in the statute and rule, 'means that such an instruction is necessary only when there is substantial evidence tending to show the good character of the defendant.' *State v. Moore,* 303 S.W.2d 60, 70 (Mo. banc 1957)." *State v. Antwine,* 506 S.W.2d 397, 399[1] (Mo.1974). It was further stated in *Antwine* at p. 399: "[i]t is only the knowledge of the witness of an accused's reputation in the community that is material, and questions to the witness should be framed to call for answers as to that issue."

■ Here the defendant made no attempt to elicit evidence concerning either the character of the defendant or the reputation which the defendant bore in his community. The defendant only showed specific acts of honest dealing. It is well settled that character, good or bad, is to be established by proof of general reputation and not by evidence of particular acts, either good or bad. *State v. Carson,* 239 S.W.2d 532 (Mo.App.1951).

■ Here it is not a matter of the use of "magic words" as defendant urges, but a fundamental omission to prove defendant's general reputation and character. Since the defendant failed to follow the only recognized method of proving defendant's character, there was no substantial evidence of his good character which required the giving of an instruction on this subject.

Defendant next contends there was no substantial evidence to show defendant violated the provisions of § 561.450, but rather shows at most a violation of § 560.156, the stealing statute. The recital of the evidence above makes it abundantly clear the defendant had obtained the confidence of Quick over a period of years. Defendant

took advantage of this confidence by the statement that he had purchased cattle and needed a check from Quick to cover the purchase price the defendant had already paid for such cattle. There is no doubt the confidence Quick reposed in defendant caused him to believe defendant's statement and formed the base for Quick to give his check. There is no precise definition of the type or class of scheme which falls under this Section, which is designed to prosecute the perpetration of the "confidence game". In *State v. Weber*, 298 S.W.2d 403 (Mo.1957) the court stated at p. 406[1, 2]: "[g]enerally speaking, a confidence game is any trick, device, or swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler, or any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money or property by taking advantage of such confidence."

It is beyond question the combination of confidence and defendant's statement caused Quick to act. Since the confidence Quick had in defendant enabled the scheme to succeed, it follows the jury was justified in finding defendant guilty of obtaining the check by the "confidence game".

The defendant makes some argument that the evidence fails to show the defendant obtained the amount of $30,360 because the evidence did not show the bank paid this check. On the contrary, the record clearly disclosed Mrs. Quick testified such amount came from their personal bank account. As noted, the check admitted in evidence also shows it was paid by the bank on the Monday following the Friday on which it was given. The evidence thus revealed defendant not only obtained a check from Quick, but that such check was paid by the bank and defendant received the full amount of the check in cash.

Defendant further argues the evidence failed to show any intent on his part. This argument is based largely on the argument that Quick and defendant had dealt over a period of years with no difficulty. It is elementary that intent to cheat and defraud may be shown by circumstances from which such intent may be inferred. *State v. Scott*, 230 S.W.2d 764 (Mo.1950). There were sufficient circumstances, as outlined above, from which the jury was justified in drawing the conclusion that defendant's acts were designed to cheat and defraud Quick out of the $30,360.

The question of whether or not the heart attack excused defendant's non-performance was for the jury to resolve. Quick stated defendant told him the cattle had already been purchased and paid for prior to his attack. The jury could find, as they must have, the swindle was conceived and executed before the attack occurred.

Defendant next argues under the lack of evidence argument that he and Quick were partners and, therefore, any money received by the defendant was from the partnership in which defendant had an interest, and, therefore, any money the defendant received would be his. Defendant then states that these facts being true, to convict him in this case would be convicting him of stealing from himself.

The difficulty with defendant's argument is that Quick testified the check given to defendant came from Quick's own personal bank account. There is no hint or suggestion that the defendant had any interest whatever in that bank account. Thus, the funds which the defendant obtained did not come from any partnership property, but came wholly from Quick's personal funds. In this circumstance there could be no partnership funds involved and defendant's argument must be rejected.

The defendant's last point concerns the refusal of the court to allow George Williams to testify that he had conducted an audit and in his opinion Quick was indebted to the defendant on April 17, 1970, in an amount in excess of $30,360. When Williams was called as a witness, the State objected to his testimony. The court then

allowed Williams to be examined and cross-examined out of the presence of the jury for the purpose of determining the admissibility of his evidence. This revealed that Williams had examined the defendant's bank account from January 1, 1970, to April 17, 1970, and had examined the bank account of Quick, through which Quick stated his dealings with the defendant had been conducted, for the period of January 1, 1970, to April 17, 1970.

Williams further testified he formed his opinion as to the relationship between Quick and the defendant based on a deposition he had read but which was not in evidence in this case. Williams further stated he did need to know more about the business arrangement between Quick and the defendant in order to justify his conclusion of a debt running from Quick to the defendant. Williams also stated he could not find that Quick had paid for ten cows obtained from defendant, but later, in apparent contradiction, stated all of the cattle had been accounted for. Williams further stated he had not examined any other books or records. Williams was not asked any hypothetical question nor was he asked to assume any facts which had been introduced in evidence.

It is axiomatic that the opinion of an expert must be supported by a substantial factual evidentiary base, even though it must not rise to absolute certainty. *State v. Maxie,* 513 S.W.2d 338 (Mo. 1974). It is obvious a conclusion or opinion as to an indebtedness between these parties could not be founded upon an examination of bank statements for a short period. There are many factors to be considered beyond such statements, such as the balance, if any, between the parties as of the starting date, an examination of all of the records of the sale barn, and an examination as to how much the defendant was called upon to pay to cover losses sustained through the sale of the cattle. All of these matters were ignored prior to the invitation to the accountant to give his opinion. In this circumstance the proffered evidence was lacking in the substantial evidentiary base required.

 Furthermore, the accountant based his opinion, at least in part, on an examination of a deposition which was not in evidence in this case. The opinion of an expert must be based on facts in evidence. *State v. Johnson,* 504 S.W.2d 334 (Mo.App. 1973). For these reasons the opinion sought to be elicited was properly refused.

Finding no error, the judgment is affirmed.

All concur.