**STATE of Missouri, Respondent,**

v.

**Gary Alvin WASHBURN, Appellant.**

**Nos. KCD 28510, KCD 28654.**

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

A. L. Shortridge, Joplin, for appellant.

John C. Danforth, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

PER CURIAM.

In a trial to the court appellant was found guilty of the commission of the crime proscribed by § 561.450, RSMo 1969, "Confidence game or fraudulent checks", and was sentenced by the court to two years imprisonment in the Department of Corrections. Two notices of appeal were filed, hence the two file numbers of this case. The first

---

notice was premature because the court deferred sentence pending a pre-sentence investigation.

Appellant makes two points. He first attacks the information because the allegation that representations by him were false and fraudulent is omitted which makes the information legally insufficient; the necessary allegation that the injured party relied upon the alleged false or deceitful pretense and was thus induced to part with his property is missing. The second point attacks the sufficiency of the evidence, in that, it is said, it was legally insufficient to prove that appellant knowingly made a false statement that was calculated by him to deceive Kenneth Clark, who was deceived and, relying upon a false representation, parted with his money.

On January 21, 1975, appellant came to the farm of Kenneth Clark, 6 miles northwest of Metz, in Vernon County, Missouri. It was early in the morning and the Clarks were still milking. Appellant, giving his name to Mr. Clark as Edward Morgan, told him he would like to inspect his lightning rods. Another man, who was not introduced, was with appellant. Mr. Clark had a house, a hay shed, machine shed, hog shed, cattle barn, milk barn, garage and two steel bins, all of which had lightning rods on them, which appellant said he wanted to inspect, and "he would give me a lifetime certificate; that there wouldn't be no more inspections or anything and that they should be good from then on," and that there would be no charge. Mr. Clark said, " 'if there is no charge involved, why go ahead and look.' " Appellant and his companion then drove copper ground rods on a new bar and attached existing cables to them, and clamped a loose rod on a hog house, which was all the work that was done, taking about 30 minutes. They went back up to appellant's pickup truck, and "He filled out a big certificate and when he got that all filled out he said that he wanted $980.00. Q. Nine hundred and eighty? A. Yes. Q. What did you say at that time? A. I told him: 'I thought this was supposed to be a free inspection?' Well, he said that

this $980.00 was supposed to be a lifetime deal and he kept talking this way and that-a-way until I finally gave him half of that." Mr. Clark told appellant he couldn't afford to pay him $960.00 at the time. Appellant said he would take the half and come back April 1st. Mr. Clark made out the $480.00 check to Edward Morgan, as appellant told him to do, and handed it to him. Appellant gave Mr. Clark the certificate he had made out, which was printed on a 12 × 16 sheet, and which was signed "Edward Morgan." The men then left, and Mr. Clark pondered for a while, then called the bank to stop payment on the check. The check was later received from the bank, as paid, by Mr. Clark.

After giving appellant the check, Mr. Clark called the company which had originally installed the rods, for which company appellant told him he worked. Mr. Clark talked to the sheriff, and then waited for appellant to return, which he did in March, at which time he again called the sheriff. They tried to stall appellant as long as they could, "and we finally had to hold him at gun point to keep him." The sheriff arrived then and brought appellant to Nevada. Mr. Clark was asked: "Q. Mr. Clark, do you believe—I assume you relied upon the statements he made as to who he was and what he was doing there, is that correct? A. That's right. Q. You believed him at that time? A. I did at that time, yes. Q. Until shortly after he left with your money and then you got worried, is that right? A. That's right." According to Mr. Clark, appellant managed to retain the certificate upon his second visit, and it was not offered into evidence.

Appellant, testifying, admitted the incidents as testified to by Mr. Clark, and "Q. This guarantee you were talking about, is this a company guarantee? A. No, its a warranty of my own. Q. Your warranty? A. It's printed out that the material is under warranty. Q. The materials in this case would have been the three rods then? A. Well, it guaranteed the work that I done. Q. So you put in three or four rods and attached the cables to them? A. I put some

new cables on, some short pieces. Q. You heard Mr. Clark say that you filled out the warranty, is that correct? A. Yes. Q. That you signed it? A. Morgan signed the warranty, his name is on it. Q. But you say it is your guarantee? A. Well, yeah, you might as well say, anytime I do the work, I back it up, yes. Q. You are the one guaranteeing the work, not Morgan? A. I was working for Morgan so he was guaranteeing the work. Q. Morgan is gone—you don't know where he is? A. That's right."

In pertinent parts, the information charged that appellant "did then and there wilfully, unlawfully and feloniously with intent to cheat and defraud Kenneth Clark of Metz, Missouri of over $900.00 by means of trick, deception and false and fraudulent representation by statements or pretense's commonly called 'the Confidence Game', by representing to the said Kenneth Clark that the above defendant in concert with others was sent down by their company to check out Kenneth Clark's farm dwelling for the lighting rod equipment that was on it. The said Gary Alvin Washburn on the 15th day of January, 1975 stayed about thirty minutes and then said that Mr. Clark owed him $900.00. Little if any work was done. The said Kenneth Clark gave the said Gary Alvin Washburn a check for $480.00. Gary Alvin WAshburn said he would return for the rest later. Gary Alvin Washburn represented to Kenneth Clark that his name was Edward Morgan and asked that the check be made payable to Edward Morgan and that the endorsement on the back of the check was signed Edward Morgan. That the amount collected was in no way justified or reasonable for the alleged work done and the said Kenneth Clark relied upon the false and fraudulent representation and was deceived thereby, * * *."

§ 561.450 provides, "Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent representation, or statement or pretense, or by any other means or instru-

ment or device, commonly called 'the confidence game', * * * shall be deemed guilty of a felony * * *."

As to that portion of appellant's first point, that the element of reliance upon the alleged false or deceitful pretense and was thus induced to part with his property is missing, the state says that appellant concedes in his brief that charge is in the language of the statute. In *State v. Cunningham*, 380 S.W.2d 401, 403[6–9] (Mo. 1964), the precise issue was ruled, "We agree with the general statement that describing the offense in the language of the statute is sufficient, but only *where the statute in denouncing the offense states all the essential elements of the crime.*" The court, on the same page, held that the information was fatally defective because it did not allege the essential element "that the victim must have *relied upon* some false and fraudulent representation, or statement or pretense by defendant and have thereby parted with his money. *State v. Fields*, Mo., 366 S.W.2d 462, 467. *State v. Stegall*, Mo., 353 S.W.2d 656, 657", and the case was reversed and remanded. Here, although the information alleges "Kenneth Clark relied upon the false and fraudulent representation and was deceived thereby", there is no allegation that he was thereby induced to part with his property. Appellant's contention must be sustained. See also *State v. Garner*, 432 S.W.2d 259, 260 (Mo.1968); and *State v. Robinson*, 14 S.W.2d 452, 453 (Mo.1929) [both bogus check cases]. Appellant's attack on the information was not contained in his motion for new trial but it is here presented and is reviewed under Rule 28.02.

There is a further reason why this case must be reversed. The evidence as presented is not sufficient to sustain the conviction in that all that is present by competent testimony is that appellant told him that his name was Edward Morgan. Although that evidence was false according to the victim's testimony, it is not tied to any other evidence of a material nature which would cause the victim to part with his property. There is no evidence that

appellant did not work for the company that installed the lightning rod, as he told Mr. Clark, or, as alleged, that he was not sent down by the company to check out the lightning rods on Clark's farm. Standing alone, the mere falsity of the name given is not material as that term is defined in false pretense cases. See *People v. Schmitt*, 155 Cal.App.2d 87, 317 P.2d 673, 687[14, 15] (1957), " 'The false pretense or representation must have *materially* influenced the owner to part with his property, but the false pretense need not be the sole inducing cause.' *People v. Ashley*, 42 Cal.2d 246, 259, 267 P.2d 271, 279"; *Nelson v. United States*, 97 U.S.App.D.C. 6, 227 F.2d 21, 25[6] (1955); *Sweeton v. Commonwealth*, 210 Ky. 340, 275 S.W. 827[1] (1925). If the evidence of false name were connected with that showing appellant did not work for the lightning rod company, and was not sent down by it, so as to give a basis for reliance and an inducement of the victim to part with his money, a case would have been made. It is noted that witness "Bob Jones United Ligh *ting* Protestation Co. employee Maryville, Missouri" is endorsed on the information, so the falsity of appellant's representations of employment may be established on new trial.

In the *Stegall* case, supra, loc. cit. 353 S.W.2d 657[2] (reversed and remanded for the same reason as in Point I here), the court said, "We have concluded, however that the judgment should not be reversed outright but that the cause should be reversed and remanded so as to give the State an opportunity to seek leave to file an amended information or to take such action as the prosecuting attorney may deem advisable." The same consideration may be here applied.

The judgment is reversed and the case is remanded.