STATE of Missouri, Respondent,

v.

William Ronald BASHAM, Appellant.

No. 60435.

Supreme Court of Missouri,
En Banc.

July 24, 1978.

Walter D. McQuie, Jr., McQuie & Deiter, Montgomery, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

The question which caused this case to be transferred by the Missouri Court of Appeals, St. Louis district, after opinion, to this court is whether the double jeopardy provisions of United States Constitution, Fifth Amendment, and Missouri Constitution, art. 1, sec. 19, prevent the retrial of a defendant where an appellate court reverses the initial conviction solely for lack of evidence to support the conviction.

Defendant was charged with perpetrating a confidence game in violation of sec. 561.450, RSMo 1969. A jury found him guilty and set punishment at six months in the county jail and a $450 fine. The trial court overruled defendant's motions for judgment of acquittal and for a new trial. On appeal, the court of appeals, St. Louis district, reversed because the evidence adduced at trial was insufficient to support a conviction. The court of appeals then remanded the case for a new trial because the information listed three witnesses who were not called by the state and therefore it appeared reasonably possible for the state to adduce additional evidence sufficient to sustain a conviction at another trial. Judge Gerald Smith concurred "with the reservations set forth in my concurring opinion in *State v. Miller*, 536 S.W.2d 524 (Mo.App. 1976)." [1] The court of appeals denied appel-

---

1. "I concur in the principal opinion because I believe it to be in accord with the law of this State as enunciated by the Supreme Court. I express here my grave reservations that an appellate court which finds insufficient evidence to make a criminal case has authority to

lant's motion for rehearing but sustained his motion to transfer to this court. The point asserted in appellant's motion for rehearing or transfer was that the order of remand for new trial violated his rights against double jeopardy under the Fifth Amendment of the U.S. Constitution, and art. 1, sec. 19, Mo. Constitution, because the court had determined that the evidence was not sufficient to support a conviction.

In the court of appeals and in this court the state maintained that the evidence was sufficient to support the conviction. All of the evidence offered by the state was admitted by the trial court. The court of appeals held the evidence insufficient. We agree and adopt that part of the court of appeals opinion concerning that issue without the use of quotes.

The facts are not complex. Sometime before October 18, 1974, defendant went three or four times to the home of Mr. and Mrs. Flavel S. Page in Mineola, Missouri, asking about painting some barns. Defendant gave Mr. Page a price of $750 to supply materials and paint the barns. Defendant wrote out on a piece of paper, which he gave to the Pages, the following:

Bill Basham
Phone 682–5701
R 1 Centrallia [sic]
$750.00 to be paid
to me for job

Mrs. Page added to the bottom of the note, "this will be for both barns paint and labor." On October 18, 1974, defendant received a check written by Mrs. Page for $400 to buy paint. When defendant cashed it the same day he presented a driver's license for identification. The bank teller wrote on the back of the check the driver's license number and address appearing on the license as "RFD 3 Box 169 Troy Mo."

The agreement and subsequent events were described by Mr. Page in these words:

"Mr. Basham told me if he would paint the barns and it wasn't satisfactory, I would [not?] have to pay him anything 'till the job was done. That was just before this contract and a few days later he came back and he said, 'I'll start painting your barns but I don't have the money to buy the paint, if you'll give it to me.' He first came and asked my wife—I had come to Montgomery—and she said, 'I will not give you a check, or anyone else, without my husband's o.k.', so he went down on Old 40 and sat there and waited 'till I come up and then he said for me to give him a check to buy the paint so he could start the painting, and I gave him a check on the 18th, which I believe was a Thursday or Friday—I believe it was Friday. He went and cashed the check and the next morning he came down with the paint—dressed up. He had no ladders, no brushes or nothing, and I was getting ready to go to St. Louis when he brought the paint. He said, 'I'll be back Monday morning [October 21, 1974] with the brushes and paint (sic) to start painting', and about 10:30 or such a matter he had not showed up and I got on the phone and called him—the number he give me to call. Some lady answered the phone—I couldn't say who it was—and I asked if he was there."

Defendant was present and when he spoke to Mr. Page on the telephone defendant said he would start painting within an hour. He did not appear as promised and Mr. Page did not see or hear from him again. Mr. Page "let it go for a while and then [he] got out a warrant for his arrest." Mr. Page

remand for new trial to give the State an opportunity to present additional evidence. To me that is a violation of the rule against double jeopardy. Our decision here, in essence, holds that the trial court erred in not directing a verdict of acquittal. If the trial court had done what we say it should have done, double jeopardy would apply. If the State is unable to present sufficient evidence to establish defendant's guilt, it should not have a second chance

to do so whether the insufficiency is determined by the jury, trial judge, or appellate court. Obviously a different situation pertains where the reversal is upon the basis of error during the trial of the case. However, as the majority opinion holds, the position stated in this concurrence is contrary to the decisions of the Supreme Court of this State, so I must reluctantly concur in the disposition made."

could not recall the exact date that he got out the warrant but estimated it to be four or five weeks after the check was given to defendant. Mr. Page acknowledged that he only called defendant one time between the time the check was given and the warrant was issued. He also stated that he tried to call defendant several times but never received an answer. When asked whether he heard recordings that the defendant's telephone was disconnected, Mr. Page stated, "It—the phone would ring but I couldn't tell—you know sometimes it will ring if it is disconnected." The paint which defendant brought to the Page place on Saturday October 19, 1974, consisted of ten gallons valued at about $50. Defendant also brought a little box of nails. It was Mr. Page's understanding that defendant was to start and complete the job right away, meaning he was to start painting Monday, October 21, 1974. Defendant did not present any evidence.

In considering whether a submissible case was made, we "view the evidence and inferences to be drawn therefrom in a light most favorable to the state and reject all evidence to the contrary. *State v. Gamache*, 519 S.W.2d 34, 39[1] (Mo.App.1975). If substantial evidence supports the finding of the jury, it will not be disturbed on appeal. *State v. Gamache*, supra." *State v. Scruggs*, 551 S.W.2d 306, 308[5] (Mo.App. 1977). "[I]ntent to cheat and defraud may be shown by circumstances from which such intent may be inferred." *State v. Schmidt*, 530 S.W.2d 424, 427[5] (Mo.App.1975). "But before a jury is permitted to find a verdict of guilty where fraudulent intent is an element of the crime there must be found in connection with the act done attending circumstances which bespeak fraud—a situation where *common experience finds a reli-*

able correlation between the act and a corresponding intent. If such a relation is absent, or if the circumstances proved are consistent with innocence or raise only a suspicion or probability of guilt, a conviction cannot be allowed to stand." *State v. Brookshire*, 329 S.W.2d 252, 256[5] (Mo.App. 1959) (citing 23 C.J.S. Criminal Law sec. 919, p. 190).

The state claims the following "facts" show an intent to cheat and defraud: defendant "immediately" cashed the check. Defendant used only a small fraction of the proceeds of the check to buy an amount of paint which was obviously insufficient to complete the job. Defendant never brought any brushes or ladders or equipment to the jobsite. Defendant falsely represented on Monday, October 21, 1974, that he would be down in an hour to start painting. Defendant "effectively disappeared" after Monday, October 21, 1974.

■■■ But there was no evidence of how much paint defendant purchased or how much would be necessary to paint the barns. We only know that defendant brought ten gallons of paint to the jobsite on Saturday, October 19, 1974. And evidence of defendant's "disappearance" consists of Mr. Page not being able to reach defendant by telephone, even though Mr. Page did reach him once at the telephone number given by defendant. The facts relied on by the state do not singly or collectively indicate that defendant had the intent to cheat and defraud at the time he promised to paint the barns or when he received the check for $400.[2] Even considering defendant's behavior after he received the check, which evidence the state claims is relevant and admissible to prove an earlier intent,[3] there is insufficient evi-

---

**2.** Because an offense under sec. 561.450 is complete when the accused (with the requisite intent) obtains the victim's property, *State v. Hartman*, 364 Mo. 1109, 273 S.W.2d 198, 206[17] (banc 1954); *State v. Weiler*, 338 S.W.2d 878, 880[2] (Mo.1960), the state must normally prove that defendant had the intent to cheat and defraud at the time he made the false representation or representations and the prosecuting witness parted with his property. *See, State v. McWilliams*, 331 S.W.2d 610, 612–

13[4] (Mo.1960); *State v. Richardson*, 228 S.W. 789, 792–93[3] (Mo.1921).

**3.** In support of this contention the state cites *State v. Schmidt*, 530 S.W.2d 424, 427[5] (Mo. App.1975) where the court stated that "intent to cheat and defraud may be shown by circumstances from which such intent may be inferred," and where some of the events reported in the case occurred after the false representations were made. *See also, State v. Richardson*, 228 S.W. 789, 792–93[3] (Mo.1921).

dence to sustain this conviction. The evidence merely raises a suspicion of guilt. Other cases finding sufficient evidence for a conviction under sec. 561.450 involve situations where there was more evidence from which the jury could infer an intent to cheat and defraud. *E. g., State v. Crow*, 487 S.W.2d 461 (Mo.1972) (money obtained for unnecessary or unperformed house and yard work); *State v. Fields*, 366 S.W.2d 462 (Mo.1963) (attempt to obtain money for worthless termite and beetle eradication work); *State v. Smith*, 324 S.W.2d 702 (Mo. 1959) (defendant stated he had probably cheated old lady when he overcharged her for materials on electrical work she had authorized after defendant told her the wiring was unsafe); *State v. Weber*, 298 S.W.2d 403 (Mo.1957) (evidence that four other people had been cheated by similar scheme to obtain money for a down payment of rent on apartment which was never rented); *State v. Schmidt*, 530 S.W.2d 424 (Mo.App.1975) (money obtained for cattle which defendant falsely stated he had already purchased); *State v. Barnes*, 517 S.W.2d 155 (Mo.App.1974) (money obtained by false statement that defendant needed money to close deal to buy a nonexistent motel). *See generally*, 38 *Mo.L.Rev.* 432, 437 (1973).

We have concluded that the evidence in this case is insufficient to show an intent to cheat and defraud and that the trial court's judgment should be reversed.

The court of appeals then remanded the cause for a new trial for the reason stated at the outset of this opinion.

■ In *Burks v. United States*, —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 [decided 6/14/78] the court stated the issue as follows: "We granted certiorari to resolve the question of whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict." That is precisely the issue in this case.

The court in *Burks* held that double jeopardy provisions of the U. S. Constitution, Fifth Amendment, preclude the retrial of a defendant where the initial conviction is reversed solely for lack of sufficient evidence to sustain the jury's verdict.

This holding is binding upon this court and requires that the judgment of the circuit court be reversed and defendant discharged.

The United States Supreme Court's opinion is unanimous and deals solely with this singular issue. No useful purpose would be served by paraphrasing it and it needs no interpretation in order that its application to our case be understood. The opinion traces the judicial history of the issue and deals exhaustively with the principal cases pertaining to it.

The judgment of the circuit court is reversed and the defendant is discharged.

MORGAN, C. J., and DONNELLY, RENDLEN and SEILER, JJ., HOUSER and STOCKARD, Special Judges, concur.

FINCH, J., not sitting.

SIMEONE, J., not participating because not a member of the court when cause was submitted.