STATE of Missouri,
Plaintiff-Respondent,

v.

William Ronald BASHAM,
Defendant-Appellant.

No. 38417.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 22, 1978.

Lester W. Duggan, Jr., St. Charles, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Presiding Judge.

Defendant Basham was convicted by a jury on the charge of perpetrating a confidence game (§ 561.450 RSMo.1969) and was sentenced to two years imprisonment. On appeal, Basham claims that the information was defective; that the court erred in permitting witnesses other than the victim to testify concerning their transactions with him. Basham also contends that the evidence was insufficient to support his conviction. We reverse.

The evidence is detailed, perhaps fulsomely, as follows: Basham approached Henry Finck at his Audrain County farm and offered to paint his barn. A written contract was entered into whereby Basham was to paint Finck's barn for ௶1,000 with additional amounts for paint and materials totalling approximately $1,600. Mr. Finck was to advance money for the paint and Basham would reimburse him for any unused portion. Mr. Finck testified that he thought the price fair and gave Basham a check for $614 to buy paint. Basham was to commence painting as soon as he had completed a work project for a neighbor, but he failed to appear except for a brief inspection of the job with a helper. Finck was unsuccessful in his efforts to reach Basham at his home on several occasions in order to prod him into initiating the work. On the final visit, Finck removed 27 gallons of paint from Basham's property, which was to be used for the painting job.

In support of Finck's testimony, the State presented the testimony of five other witnesses who related their experiences with Basham within the same general time frame as the episode involving Mr. Finck.

Delbert Brown testified that he had paid Basham $100 in advance to buy paint for work to be performed for him. Bad weather impeded him, but Basham did start and completed a substantial amount of work. Brown was dissatisfied with Basham's performance but nonetheless negotiated with him for additional work and gave him a $200 advance to buy more paint. Brown finally halted Basham's painting because he did not like his work methods. Brown later tried unsuccessfully to have him finish the project and did not pay anything for the labor on the completed portion.

Paris Craighead, Sr. testified that he gave Basham $100 to buy paint; that he appeared at Craighead's farm only once and without any paint. After a lapse of about two months, Craighead reported the incident to the county prosecutor and received his $100, presumably from Basham.

Richard Erisman testified that he made two contracts with Basham. He paid him $175 for paint and labor in painting a barn roof and shed. After the roof and shed were painted and the work paid for, Basham, at Erisman's request, painted some barn doors and fence but failed to complete painting the house as contemplated, and Erisman paid only $100 for the work which was considered "fair for the amount of labor he [Basham] has done. . . . We kind of caught him up for his labor."

Edward Busse related that he did not need any painting done but that he had asked Basham to put a new roof on his shed. He refused Basham's request to pay in advance for the roofing materials but agreed to reimburse him when they were delivered. He paid $212 for shingles when they were brought to his farm, but Basham never did the work or attempt to collect the remainder of the agreed price.[1]

Flavel Page testified that he advanced $400 to Basham for paint; that he brought ten gallons of paint to the Page farm but was never seen again.[2]

1. Busse's testimony was ultimately stricken as being too remote.

2. In a separate action, the State brought a confidence game charge against Basham on the Flavel Page transaction, relying only on the testimony of Page to make the case. Basham was convicted by a jury, but on appeal, the Supreme Court reversed finding the evidence insufficient to support the conviction. *State v. Basham*, 568 S.W.2d 518, (Mo. banc 1978).

Paul Purvis, the manager of a farm supply store in the area, stated that Basham had charged paint valued at $643.50 and related that he was doing work for Brown and Finck. Purvis said that he did not sell Basham the 27 gallons of paint which Finck ultimately took from Basham and kept for himself.

Basham objected to the admission of the testimony of Brown, Craighead, Erisman, Busse and Page on the ground that it purported to prove offenses other than the offense charged, but the court admitted the testimony to show "intent to cheat and defraud" by showing a common scheme in the defendant's activities. Basham continues to press the point on appeal.

To sustain a charge under § 561.-450,[3] the State must establish that the defendant had the intent to cheat or defraud at the time the false representations were made to cause the victim to part with his property. *State v. Basham*, 568 S.W.2d 518, (Mo. banc 1978). Otherwise, there is no element of deceit or fraud, and the defendant upon non-performance would be guilty of no more than breach of contract, not subject to criminal sanction. The subjective intent of the defendant at the time of making his promise is, of course, rarely open to direct proof. Therefore, the mens rea may be proved by means of circumstantial evidence. In particular, it has been held that in order to prove intent to defraud in a confidence scheme based upon a promise, the State may introduce evidence of similar incidents whereby the defendant obtained money from other victims by making the same sort of promise. *State v. Weber*, 298 S.W.2d 403 (Mo.1957). The theory which underlies admission of such evidence is that if a defendant consistently makes the same promise to a number of victims, and, after obtaining the victims' money, consistently fails to perform, it may be fairly inferred from the pattern of behavior that no mischance could reasonably explain all the failures of performance.

Thus, a strong presumption exists that the defendant must have intended not to perform in any instance and particularly in the situation in which he has been charged. Before this evidentiary strategy may be used, however, it is essential that the behavioral attributes of the other activities be unequivocal and sufficiently similar to the offense charged. *State v. Klosterman*, 471 S.W.2d 175 (Mo.1971).

We are constrained to hold that the evidence here is insufficient to support Basham's conviction. Craighead lost nothing. Basham not only produced supplies for Brown and Erisman but did a substantial amount of painting for them to the extent they hired him to do additional work. There were no complaints that Basham euchred them out of anything. In fact, the record indicates that in some instances Basham was not fully compensated for work he performed.

The testimony of Busse argues most conclusively against the State's case. Busse refused to advance any money for supplies. That should have concluded Basham's efforts if he were a confidence trickster, but he did not object. He purchased the necessary supplies himself and had them delivered, receiving payment after delivery.

Page received only 10 gallons of paint for his $400 advance payment, which is so scant that if intent could be proven, a scheme based on such minimal performance might be considered a confidence game. See e. g., *State v. Fields*, 366 S.W.2d 462 (Mo.1963). But in *State v. Basham*, supra, a separate case against Basham, the Supreme Court specifically held that the testimony of Page was insufficient to show intent by Basham to cheat and defraud:

> "The facts relied on by the state do not singly or collectively indicate that defendant [Basham] had the intent to cheat and defraud at the time he promised to paint the barns or when he received the check [Page's check] for $400. Even con-

---

**3.** The Criminal Code, effective January 1, 1979, includes within the stealing provisions of § 570.030, the appropriation of property by deceit, which is congruent with the current § 561.450 confidence game terms.

sidering defendant's behavior after he received the check, which evidence the state claims is relevant and admissible to prove an earlier intent, there is insufficient evidence to sustain this conviction. The evidence merely raises a suspicion of guilt." *State v. Basham*, supra.

The sum of the testimony does not resemble the clear cut, consistent scheme evident in the *Weber* case. It appears that none of the witnesses was totally pleased in his dealings with Basham, but that is not the crime with which he is charged. The testimony was offered as circumstantial proof from the witnesses' experience that when Basham contracted to buy paint and do painting for Finck, he had no intention of fulfilling his promises but made the promise only to obtain Finck's confidence in order to secure the $614 check. If he had done so with all the others, such an inference could be fairly drawn from his behavior with Finck. However, three of the four witnesses gave uncontradicted testimony that he either minimally or substantially performed upon his promises, at least to the extent of buying paint. Thus, the evidence does not support the desired inference. The evidence was consistent in showing that Basham failed to perform the work involved in each of his contracts. But conviction cannot rest on that fact, because he did not ask for or receive advance payment from any of his customers for labor. His scheme, if he had one, had to depend on unearned profits from monies advanced for supplies.

The fundamental tenet on the admissibility of circumstantial evidence requires that the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt. They must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. *State v. Thoe*, 565 S.W.2d 818 (Mo.App.1978). Applying this precept to the facts of this case, it is readily apparent that the circumstantial evidence supports a reasonable inference that the defendant was a rather shoddy businessman with little working capital, who procrastinated on his obligations and often failed to complete his jobs. Such an inference would support civil liability for breach of contract with his dissatisfied customers but not criminal liability for perpetrating a confidence game. The requisite intent not to perform is belied by the evidence that he usually did perform in some manner, however inadequately.

The cumulative effect of the circumstantial evidence of Craighead, Page, Erisman and Brown is such that an inference supporting Basham's innocence can reasonably be drawn from it. The presumption of innocence is not, therefore, effaced. *State v. Gonzales*, 533 S.W.2d 268 (Mo.App.1976).

The evidence presented by the complaining witness Finck is insufficient to support Basham's conviction. In the matter of intent, there is no evidence that he did not intend to do the painting on Finck's farm. The circumstantial evidence of the other witnesses, except for Page, is not beneficial to the State's case, as it showed that at least some of the time Basham did do painting; that he owned painting equipment and hired others to work for him. As mentioned, the Supreme Court held that Page's testimony would not support a conviction. *State v. Basham*, supra. As to his promise to buy paint with the money advanced, the State produced ample direct evidence that he kept his promise. The 27 gallons of paint taken and retained by Finck were assorted according to the specifications for the job and apparently were purchased by Basham for that purpose. This is circumstantial evidence that he intended to do the painting on Finck's farm. Additionally, the evidence given by Purvis that Basham actually purchased paint at a cost of $643.50 in addition to the 27 gallons retained by Finck is substantial proof of his general pattern of buying paint after having been advanced money to do so.

The State has failed to prove misrepresentation either in the promise to paint or in the promise to buy paint. These are the only promises made by Basham material to inducing Finck to advance money to buy paint. As the proof fails in that respect, it is insufficient to support the conviction.

*State v. Basham,* supra; *State v. Washburn,* 549 S.W.2d 636 (Mo.App.1977).

The judgment of conviction is reversed.

WEIER and KELLY, JJ., concur.