STATE of Missouri, Respondent,

v.

Howard W. BEACOM, Appellant.

No. WD 31314.

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

K. Stanley Clay, Asst. Public Defender and David M. Strauss, Public Defender, Columbia, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, J., and WASSERSTROM, C. J.

PRITCHARD, Presiding Judge.

Appellant was found guilty by a jury verdict of stealing by deceit [§ 570.030, RSMo 1978, Effective 1–1–79], and it assessed his punishment at two years imprisonment in the Division of Corrections. In accordance with the verdict, the trial court entered judgment.

Appellant's two points attack the sufficiency of the evidence to support the verdict. He contends that there was insufficient evidence to show that he had the intent to cheat and defraud at the time he represented to the victim that he would deliver title (to a mobile home); and that there was insufficient evidence to show that he, at the time he represented that he would deliver title (of the mobile home), knew that the representations were false.

The facts are these: In February, 1979, Mrs. Rochelle Ivicsics and appellant made an agreement to buy a mobile home located in Crescent Meadows in Boone County, Missouri. That mobile home was of a yellow and white color, and Mrs. Ivicsics paid $1,000 down payment on it. Appellant informed her that she could not get that mobile home because some people were living in it, so an agreement was made for the purchase of a brown and white mobile home, for $200 more, that belonged to appellant, as he said, the total price being $7,500. $1,000 paid by Mrs. Ivicsics on the first mobile home was applied to the down payment on the brown and white unit, along with another $1,000 in cash. On March 7, 1979, Mrs. Ivicsics paid appellant an additional $4,000 on the trailer, and on April 3, 1979, she paid him an additional $150.00. By May 22, 1979, she had paid in full for the home. By a written instrument dated May 22, 1979, Mrs. Ivicsics made demand for the title for the double wide mobile home, reciting that final payment was made on May 19, 1979, with a total cost of $7,450. Appellant signed this instrument under the notation, "I Howard Beacom agree to this or I realize I'm lible for lawsuit."

During the time Mrs. Ivicsics was purchasing the mobile home she and appellant discussed the title to it. "A. Well, when I give him the 4,000, I was kind of hesitating, and I asked him, I said, 'Howard, are you sure you got that title?' He said, 'Rochelle, I'm not going to fool around'. He said, 'I have got the title'. He says everything was in such a mess at that time he couldn't get it at that time, but he had the title." On an occasion when appellant's mother (or sister) died, appellant told Mrs. Ivicsics that he had just received a bunch of titles from the bank, and he had to look through them to locate the one (hers). She did not bother

him for a few days, but called him thereafter about the title almost every day, but he did not produce it nor did he return her money to her. She moved out later when the mobile home was repossessed. Mrs. Ivicsics gave appellant the money for the mobile home because she trusted him.

Gary Major, vice president of the Bank of Kirksville, was administrator of all types of loans therein. Appellant had a double wide mobile home financed at the bank, and the bank had possession of the title to it, and still did at the time of trial, having foreclosed on the mobile home. In its regular course of business, the bank keeps title on business transactions if it has a loan on an item. Appellant never made any effort to secure the title to the mobile home that Major was aware of. The amount of the loan against the mobile home was approximately $8,200, and appellant was behind two payments when it was foreclosed.

Rod McCreary, chief detective for the Boone County Sheriff's Department, talked with appellant on June 20, 1979, first giving him the *Miranda* warnings. "A. I had asked Mr. Beacom if he had in fact sold the trailer to Miss Ivicsics. Mr. Beacom said he did. I asked Mr. Beacom if he owned the trailer. Mr. Beacom said he did not. I asked Mr. Beacom who in fact the title holder was, and Mr. Beacom stated it was the Bank of Kirksville. I then asked Mr. Beacom approximately how much money he owed the Bank of Kirksville regarding the trailer, and Mr. Beacom replied approximately $7,000."

§ 570.030, supra, 1., provides: "A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

The word "deceit" in the statute is defined in § 570.010(7) as meaning, " * * * purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention, or other state of mind. * * * Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise * * *."

Under the statute and under *State v. Basham*, 568 S.W.2d 518, 520 (Mo.banc 1978); and *State v. Basham*, 571 S.W.2d 130, 132 (Mo.App.1978), which were prosecutions under the previous "confidence game" statute, § 561.450, RSMo 1969, the courts noted the principle that the facts must show that defendant had the intent to cheat and defraud at the time a promise was made. Thus, deception as to appellant's intention may not be inferred *alone* from the subsequent failure to perform, here the failure to deliver the title to the mobile home.

There are, however, other facts from which the jury might find that appellant had the requisite present intent to deceive Mrs. Ivicsics as to delivery of the title to the mobile home to her. When she paid him by her check for $4,000 on March 7, 1979, she asked him if he was sure he had the title and he answered that "I have got the title" and that everything was in such a mess at the time that he could not get it, "but he had the title." He did not inform Mrs. Ivicsics that the title was in the possession of the Bank of Kirksville being held with the bank's security interest in the mobile home securing his debt to it of some $8,200.00 and that he would not be able to get the title until he paid off that debt. These facts were well known to him as the evidence shows. Upon Mrs. Ivicsics repeated requests for the title, and upon the one specific instance he told her he would have to look through a group of titles, the jury could find that he well knew the instant title was not among them because he had not paid off his debt to the bank. The jury could find that appellant's deceit continued, and that he knew that since he did not have the title, he could not deliver it. Compare the cases under former § 561.450, holding the evidence sufficient for the jury to infer a [present] intent to defraud collected at page 521 of *State v. Basham*, supra (568 S.W.2d 518). The fact that appellant later acknowledged his civil liability

in the transaction is immaterial to his existent intent to deceive at the time of his representation. Appellant's points are overruled.

The judgment is affirmed.

All concur.