**STATE of Missouri, Respondent,**

v.

**Gary L. WEEKLEY, Appellant.**

No. 21612.

Missouri Court of Appeals,
Southern District,
Division One.

March 11, 1998.

Motion for Rehearing and Transfer to Supreme Court Denied April 7, 1998.

Gwenda R. Robinson, Asst. Public Defender, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant was tried by jury on two counts. Count I accused Appellant of stealing a truck. Count II also accused Appellant of stealing a truck—a different truck than Count I.

The jury found Appellant guilty of Count I but acquitted him of Count II. The trial court entered judgment per the verdict. This appeal followed.

Each count alleged Appellant, on or about May 22, 1995, stole a 1994 Ford dump truck owned by Wayne County. The only difference between the counts was that Count I identified the truck as "VIN 1FDPF70J5RVA41864," while Count II identified the truck as "VIN 1FDPF70J5RVA41865." .

A close examination of the VIN in each count reveals that the only difference between them is that the final digit in the VIN of the truck in Count I is 4, while the final digit in the VIN of the truck in Count II is 5.

The verdict-directing instruction that submitted Count I to the jury was Instruction 5. The verdict-directing instruction that submitted Count II to the jury was Instruction 6. The only difference between the instructions was that Instruction 5, consistent with Count I, hypothesized the VIN was 1FDPF70J5RVA41864, while Instruction 6, consistent with Count II, hypothesized the VIN was 1FDPF70J5RVA41865.

The second of Appellant's three points relied on is dispositive of this appeal. It reads:

"The trial court clearly erred in overruling [Appellant's] motions for judgment of acquittal at the close of the State's case and at the close of the entire case because the evidence is insufficient to support his conviction for stealing a motor vehicle. The State failed to prove beyond a reasonable doubt that [Appellant] stole a 1994 Ford truck with vehicle identification number (VIN), 1FDPF70J5RVA41864. Therefore, the trial court denied [Appellant's] rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Missouri Constitution."

█ Appellant's claim that the trial court erred in denying his motion for judgment of acquittal at the close of the State's case need not be considered because Appellant presented evidence after the trial court denied that motion. By presenting evidence, Appellant

waived any claim of error regarding that ruling. *State v. Purlee*, 839 S.W.2d 584, 587[1] (Mo. banc 1992). Consequently, the issue for adjudication under Appellant's second point is whether the trial court erred in denying Appellant's motion for judgment of acquittal at the close of the entire case.

As shall become obvious *infra*, it is unnecessary to synopsize all of the State's evidence. This opinion sets forth only the evidence germane to this court's ruling on Appellant's second point.

During the night of May 22, 1995, two dump trucks and sundry other items were unlawfully taken from the Wayne County Road and Bridge Department shed.

A dump truck was found the next day, partially submerged in a river in Wayne County. Another dump truck was found and seized May 28, 1995, by law enforcement officials in Lincoln County.

Endeavoring to prove that the truck found in the river and the truck seized in Lincoln County were the trucks taken from the county shed, the State presented this testimony from the sheriff of Wayne County:

"Q. . . . The trucks themselves, the dump trucks, the one in the river and also the one that was recovered from up in Lincoln County, were you able to cross-match vehicle identification numbers on those?

A. Yes, sir.

Q. Okay. And in fact did the vehicle identification numbers on both of these vehicles match up with the vehicle identification numbers on the applications for certificate of title?

A. Yes, sir.

Q. Held by the county?

A. Yes, sir."

The State also presented testimony by a former employee of the Wayne County Road and Bridge Department; he testified:

"Q. . . . Did you have the opportunity to view the county truck whenever it was down in the river?

A. Yes.

Q. Okay. And you were able to positively identify it as one of the trucks that was taken?

A. Yes.

Q. Okay. Did you check the vehicle identification number on it?

A. No, I didn't.

Q. Okay. But somebody did?

A. Yeah, somebody did. But I know the trucks; I went to Arkansas and picked them up.

Q. Okay. And there were identical trucks, in fact, the vehicle identification number was just one sequence more than the other one, is that right?

A. I believe it is; we have four of them."

Additionally, the State presented the following testimony by a county commissioner of Wayne County:

"Q. ... you got both of the trucks back at a later time, is that right?

A. Yes.

Q. Okay. And the VIN's were checked against the title applications and they matched?

A. Yes."

The State's brief identifies no proof that the VIN of one of the trucks taken from the county shed was 1FDPF70J5RVA41864 (the VIN in Count I) or that the VIN of the other truck taken from the county shed was 1FDPF70J5RVA41865 (the VIN in Count II). This court's search of the record has turned up no such evidence.

Additionally, the State's brief identifies no proof of the VIN of the truck found in the river and no proof of the VIN of the truck seized in Lincoln County.

The significance of the above gaps in the evidence is set forth later, after the synopsis of some additional evidence.

The only witnesses who described Appellant's activities on the night the trucks were taken were Ronald Weekley (Appellant's brother) and Michael Flanery.

Ronald testified he, Flanery and Appellant went to the county shed in Flanery's pickup. According to Ronald, he heard glass break, then saw Appellant drive a dump truck out of the shed.

Ronald recounted that he and Flanery left the shed and went to Greenville. Ronald avowed he knew nothing about anything else being taken from the shed. Later that night, said Ronald, he met Appellant at a bar. Appellant was driving a dump truck marked "Wayne County."

Ronald told the jurors Appellant drove the truck to Winfield, accompanied by Ronald. Ronald eventually parted company with Appellant and went to St. Charles.

Flanery's testimony, while vague, was similar to Ronald's account of what occurred at the county shed. However, unlike Ronald, Flanery avowed he went home after leaving the shed.

The next day, said Flanery, he saw Appellant in a dump truck near Flanery's residence. The truck had "Wayne County" on its side. Flanery quoted Appellant as saying "something about going to St. Charles."

Ronald "showed up" while Appellant and Flanery were together. Flanery recalled a comment about another dump truck, "[s]omething about it being in the river." Asked who said that, Flanery replied, "I guess [Ronald] did."

Asked who departed in the dump truck, Flanery answered, "I believe [Appellant] did."

As reported earlier, Count I (of which Appellant was found guilty) was submitted to the jury by Instruction 5. The instruction hypothesized, *inter alia,* that Appellant or Ronald or Flanery took truck VIN 1FDPF70J5RVA41864.[1] For convenience, this opinion henceforth refers to that VIN as "VIN 4," the digit 4 being the last digit in the VIN. For the same purpose, this opinion henceforth refers to the VIN in Count II as "VIN 5," the digit 5 being the last digit in that VIN.

Instruction 5 told the jurors that unless they found and believed from the evidence beyond a reasonable doubt each and all of the propositions hypothesized in the instruc-

---

1. Ronald and Flanery testified for the State pursuant to plea bargains.

tion, they must find Appellant not guilty of Count I.

■ As we have seen, there was no evidence that either truck taken from the county shed bore VIN 4 (or VIN 5, for that matter). Furthermore, there was no evidence that the truck found in the river bore VIN 4 (or VIN 5), and no evidence that the truck seized in Lincoln County bore VIN 4 (or VIN 5).

Assuming, arguendo, that the evidence was sufficient to support a finding that the VIN of the truck found in the river matched the VIN of one of the trucks taken from the county shed, and that the evidence was sufficient to support a finding that the VIN of truck seized in Lincoln County matched the VIN of the other truck taken from the county shed, it is nonetheless impossible to determine whether the truck found in the river was the truck on which Count I was based or the truck on which Count II was based. It is likewise impossible to determine whether the truck seized in Lincoln County was the truck on which Count I was based or the truck on which Count II was based.

The State's brief argues:

"The State alleged, under a theory of accomplice liability, that appellant stole two dump trucks, specifying the VIN numbers of the two dump trucks.... The State's evidence was that the VIN numbers on the two dump trucks recovered in the days following the theft matched the VIN numbers on the certificates of title held by Wayne County.... This was sufficient to satisfy the statutory elements of the crime of stealing."

The State's argument ignores Appellant's acquittal on Count II and the impossibility of determining which truck the jurors believed Appellant stole, the one found in the river or the one seized in Lincoln County.

While a robust argument can be made that the State presented a stronger case against Appellant on the truck seized in Lincoln County than on the truck found in the river, there is no way to ascertain which truck (if either) was VIN 4 and which truck (if either) was VIN 5. If the truck seized in Lincoln County was VIN 5 (the VIN in Count II), it

is arguable that the jurors unwittingly acquitted Appellant of the alleged theft as to which they believed him guilty.

All of this is not simply an exercise in mental gymnastics.

As noted earlier, one of the propositions hypothesized in Instruction 5 was that Appellant stole truck VIN 4. Instruction 5 cautioned the jurors: "[U]nless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the Defendant not guilty of [Count I]." There was not a scintilla of evidence that either of the trucks carried VIN 4.

■ An instruction should not be given if there is no evidence to support it. *State v. Williams*, 652 S.W.2d 102, 114[32] (Mo. banc 1983). As there was no evidentiary support for the proposition in Instruction 5 that Appellant stole a truck with VIN 4, the evidence was insufficient to support a finding of guilty of Count I *as submitted in Instruction 5*. The State cites no case, and this court has found none, affirming a conviction where one of the propositions hypothesized in the verdict-directing instruction was utterly without evidentiary support. Consequently, this court holds Appellant's conviction of Count I must be reversed.

It might be argued that inasmuch as there was sufficient evidence to support a finding that Appellant stole at least one of the trucks taken from the county shed (as the jury obviously believed), the State is entitled to retry Appellant for one of the alleged thefts. The vexing aspect of that argument is that the record does not reveal which truck the jurors believed Appellant stole, the one found in the river or the one seized in Lincoln County.

■ Irrespective of that, however, where an accused is acquitted of a criminal charge, he cannot be tried again on that charge. *State v. Johnson*, 598 S.W.2d 123, 125[1] (Mo. banc 1980), *cert. denied*, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980). Consequently, Appellant cannot be retried on Count II, as the jury acquitted him of it (without knowing which truck was the sub-

ject of Count II, the truck found in the river or the truck seized in Lincoln County).

■ As to Count I, the double jeopardy clause of the Constitution of the United States forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster at the first trial. *State v. Montgomery*, 591 S.W.2d 412, 415[5] (Mo.App. S.D. 1979), citing *Burks v. United States*, 437 U.S. 1, 10–12, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). *See also: State v. Basham*, 568 S.W.2d 518, 521[3] (Mo. banc 1978), barring retrial where an accused's conviction was reversed for lack of sufficient evidence to support the jury's verdict.

■ Earlier in this opinion, this court held Appellant's conviction on Count I must be reversed because there was no evidence to support one of the propositions hypothesized in the verdict-directing instruction on that count. Because the reversal is for failure of proof, ordering a retrial on Count I would contradict *Montgomery*, *Burks* and *Basham*, cited in the preceding paragraph.

The bizarre circumstances of this case, coupled with the authorities cited in this opinion, compel this court to reverse the conviction and discharge Appellant. This court emphasizes its holding is limited to the unique facts of this case, facts unlike any Missouri case this court encountered in its research.[2]

Judgment reversed.

GARRISON, P.J., and PREWITT, J., concur.

## ON MOTION FOR REHEARING OR, IN THE ALTERNATIVE, TO TRANSFER TO SUPREME COURT OF MISSOURI

### PER CURIAM.

In a motion for rehearing or, in the alternative, to transfer this case to the Supreme Court of Missouri, the State avers the jurors could have deduced from the evidence that the truck found in the river was the one Appellant was charged with stealing in Count II, the count of which he was acquitted. Therefore, reasons the State, the jurors must have believed Appellant stole the truck seized in Lincoln County.

The evidence cited by the State in support of that hypothesis is the testimony of the former employee of the Wayne County Road and Bridge Department, quoted in pertinent part in the opinion.

The witness stated he saw the truck in the river and identified it as one of the two trucks taken from the shed. The witness conceded he did not check the VIN on the truck in the river, but avowed he knew the trucks because he had picked them up in Arkansas.

The prosecutor then asked: "Okay. And there were identical trucks, in fact, the vehicle identification number was just one sequence more than the other one, is that right?"

The witness responded: "I believe it is; we have four of them."

According to the State, the latter answer was evidence that the VIN of the truck found in the river was a higher number than the VIN of the other missing truck. Therefore, argues the State, inasmuch as (a) the truck which was the subject of Count I was alleged to have VIN 4, while the truck which was the subject of Count II was alleged to have VIN 5, and (b) the verdict-directing instruction submitting each count set forth the VIN in that count, the jurors could have found that the truck in the river carried VIN 5. Based on that assumption, the State maintains the jury convicted Appellant of stealing the truck seized in Lincoln County, which had to have carried VIN 4, the VIN in Count I.

If the testimony cited by the State meant what the State claims it meant, Appellant's conviction of Count I could arguably be affirmed. However, a close reading of the testimony shows the witness did not say what the State wishes he had said.

---

2. The closest case is *State v. Mitchell*, 704 S.W.2d 280 (Mo.App. S.D.1986). However, in that case the accused was convicted of both counts and the reversal was not because of insufficient evidence on either count, hence a retrial on both counts was allowed.

After testifying that the truck in the river was one of the missing trucks, the witness revealed he had not checked its VIN. Inasmuch as the witness described the trucks as identical and testified there were four of them, it is obvious that even though the witness believed the trucks had VIN's with sequential numbers, he would not have known whether the truck in the river had the lower or higher number without looking at its VIN (and without knowing the VIN of the other missing truck). The prosecutor, who posed the question, may have learned from his trial preparation that the truck found in river had the higher number (if indeed it did), but nothing in the record suggests the witness knew that.

Furthermore, it is not clear from the question that the prosecutor was asking whether the truck in the river had the higher number. The question could reasonably be understood as asking only whether one of the two trucks taken from the shed had a VIN one number higher than the other.

Another contention by the State is that the inclusion of the VIN in the verdict-directing instruction for each count was surplusage which the prosecutor was not required to prove. The State cites cases in support of that hypothesis; however, those cases do not govern the instant case. In those cases, the verdict-directing instruction did not hypothesize a fact which the prosecutor failed to prove. As explained in this court's opinion, this court has discovered no case affirming a conviction where one of the propositions hypothesized in the verdict-directing instruction was utterly without evidentiary support.

Contrary to the State's position, the inclusion of the VIN in the two counts of the information and in the verdict-directing instruction for each count was not "mere surplusage." The VIN provided the chosen (but not the exclusive) means to distinguish Count I from Count II. Without proof of the VIN's, there is no way to determine which truck the jury convicted (or acquitted) Appellant of stealing.

The State's post-opinion motion is denied.